Edwin Kassoff, J.
This action is brought before this court in an effort to invoke the "summary jurisdiction, which this court possesses, to make adjudications based upon the health and welfare of children who are its wards and over whom it has jurisdiction.” (Matter of Denberg v Denberg, 34 Misc 2d 980, 985.)
Petitioner and respondent were divorced in 1974. Pursuant to the terms of the divorce petitioner was awarded joint custody of the infant, and temporary custody during the *234 summer recess from school. At all other times the infant resides with the mother. Presently, the infant is and for the past month has been residing with the petitioner.
On February 15, 1975, the petitioner was married and now resides with his wife in a one-family, three-bedroom house which they purchased in Queens County.
Respondent was married to an Australian citizen on August 20, 1976 and plans to reside with the infant and her new husband in Australia.
Petitioner brings this action to obtain custody and to prevent the respondent from removing the infant from the United States.
A hearing was held and, in addition to testimony by the petitioner and the respondent, the court took testimony of the spouses of each of the afore-mentioned.
The parties and their attorneys consented to an on-the-record questioning of the infant, out of the presence of the parties and their attorneys. The record was sealed except for appellate review.
The terms "divided” or "joint” custody are frequently used to connote technical custodial arrangements, and may apply to a single child. Custody carries the implications of personal power. Visitation implies the acquiescence to that power. In this matter the parties have by agreement consented to joint custody of the child. Respondent states that she does not desire to have the child forget her natural father, nor is it her desire to deprive the father of his influence with regard to her guidance and education. If permitted by the court to remove the infant from the jurisdiction of this court to Australia the mother states that she will consent to the father having longer visitation periods during the summer. To insure the child’s return the mother demands that the father post a bond.
There is no doubt in the court’s mind that both parents love their child and seek the relief that they believe to be in the child’s best interests.
It is the duty of the court to look primarily to the child’s welfare and interests when a question of custody is raised. (Matter of Norcia v Richard, 32 AD2d 656; Burns v Burns, 264 App Div 894.) The court must look at the total picture and consider and weigh all factors in determining what is for the best interest of the child with regard to custody. (People ex *235 rel. Wasserberger v Wasserberger, 42 AD2d 93, affd 34 NY2d 660.) In rare cases, the court will, where necessary, award custody to a third party. (See Spade v Spade, 6 Misc 2d 170; People ex rel. Brussel v Brussel, 281 App Div 247.) The parties must realize that the determination of custody by the court in this proceeding is not a determination of the rights between the parents, but a determination solely for the best interests and welfare of the child.
Historically, the courts in our State recognized the principle that it was in the child’s best interest to be in the mother’s custody. (See Ullman v Ullman, 151 App Div 419; Matter of Vincent v Vincent, 47 AD2d 786; Domestic Relations Law, §§ 70, 240.)
However, under section 70 of the Domestic Relations Law, in habeas corpus proceedings which are analogous to the instant proceeding, the law provides that: "In all cases there shall be no prima facie right to custody of the child in either parent, but the court shall determine solely what is for the best interest of the child, and what will best promote its welfare and happiness, and make award accordingly.”
Section 240 of the Domestic Relations Law states: "In any action or proceeding brought * * * (4) to obtain, by a writ of habeas corpus or by petition and order to show cause, the custody of or right to visitation with any child of a marriage, the court must give such direction, between the parties, for the custody, care, education and maintenance of any child of the parties, as, in the court’s discretion, justice requires, having regard to the circumstances of the case and of the respective parties and to the best interests of the child. In all cases there shall be no prima facie right to the custody of the child by either parent.”
Children in divorce and custody proceedings are often the victims and are unknowingly sentenced in some cases to an insecure and tormented childhood, filled with unfounded guilt and untold pain and suffering. A child is not a thing or an object to give as a prize to the winners of a contest. It is a precious, unique individual being, whose life will be affected by the court’s decision in the matter of custody. All children in divorce and custody proceedings have certain inalienable rights in and out of court.
The Magna Carta, or Bill of Rights, for children may be set forth as follows:
*236 (1.) The right to be treated as an interested and affected person and not as a pawn or chattel of either or both parents.
(2.) The right to that home environment which will best guarantee an opportunity to grow to mature and responsible citizenship.
(3.) The right to the privilege and benefits of being a United States resident and citizen.
(4.) The right to the day-by-day love, care, discipline and protection of the parent having custody.
(5.) The right to know the noncustodial parent and to have the benefit of that parent’s love and guidance through adequate visitation.
(6.) The right to a positive and constructive relationship with both parents, with neither to be permitted to degrade the other in the mind of the child.
(7.) The right to the most adequate level of economic support that can be provided by the best efforts of both parents.
(8.) The right to the same opportunities for education that the child would have if the family unit were not broken.
(9.) The right to periodic review of custodial arrangements and child-support orders as the circumstances may require.
(10.) The right to recognition that children involved in a divorce or custody are disadvantaged parties and that the law must take affirmative steps to protect their welfare and security including, where indicated, a social investigation to determine their interests and the appointment of a guardian ad litem and/or attorney to protect their interests.
(11.) The right to have the benefits of all the afore-mentioned, instead of subjecting the infant to unknown circumstances and surroundings where these basic rights cannot be guaranteed.
This court is not concerned with the private differences between the parties, nor is it determining rights as between parents and child. Instead, as parens patriae, it is assuming jurisdiction and exercising the powers inherent in that jurisdiction for the sole purpose of protecting the infant. (Finlay v Finlay, 240 NY 429, 431; Matter of Lang v Lang, 9 AD2d 401, 405; Matter of Bachman v Mejias, 1 NY2d 575, 581.)
The major issue that confronts this court is the mother’s announced intention to move with the child to Australia.
Once the infant is removed to Australia, this court loses its *237 jurisdiction over her. The well-settled rule in New York State is that the full faith and credit clause of the Constitution does not apply to custody decrees. Once the infant is before our court we will assume jurisdiction and as parens patriae decide what is best for the child. The Australian courts will exercise the same prerogative and will assume jurisdiction over the infant.
It is true that "nowhere in the world today is the right of citizenship of greater worth to an individual than it is in this country. It would be difficult to exaggerate its value and importance.” (Schneiderman v United States, 320 US 118, 122.) This court will jealously guard this treasured birthright of the child. (People ex rel. Djurovic v Djurovic, 205 Misc 216, affd 283 App Div 1055.) All Americans, no matter what economic, social, religious or racial group they happen to fall into, share in a priceless possession, the right of being a citizen in this great country of ours. "I was born an American, I will live an American, I shall die an American.” (Daniel Webster, speech, July 17, 1850.)
To award custody to the mother would, in effect, be to completely deny to the infant the right to the love, parental care, companionship and guidance of her father. Further, it would deprive her of the right to be raised and educated in her own country — which is part of her birthright. Moreover, it would deprive the petitioner of the natural rights he has as a father — since he would be completely cut off from his daughter by a distance of many thousands of miles. (See Matter of Kades, 23 Misc 2d 222, affd 10 AD2d 919; People ex rel. Djurovic v Djurovic, supra.)
The benefits, environment, educational opportunities, cultural climate, as well as the economic standards of the father are known factors which would act toward the benefit of the child if custody is awarded to the father. However, these factors would be unknown if the mother is permitted to remove the infant to Australia.
The permanent removal of a domiciliary child must not be permitted where it renders rights of visitation illusory.
The court, anguished in making this most difficult decision, is mindful of the fact that the act of the mother brought about these circumstances wherein the court’s decision must remove the child from the custody of one of the parents.
In view of the circumstances, I find that the mother is not acting in the best interests of her daughter in attempting to *238 take her to Australia, where the child will be raised, educated and brought up for all practical purposes as an Australian.
It is my conclusion, based upon all the evidence before the court, that the best interests of this seven-year-old child require that custody be given to the father. The order to be settled shall provide for the most liberal visitation for the mother, provided said visitation takes place within the State of New York. The father is relieved of his obligation to pay to his wife the sum of $75 per week for child support so long as he has custody of his daughter.