384 So.2d 1348 (1980)
Thomas J. VILTZ, Appellant,
v.
Anna Maria Cerbini VILTZ, Appellee.
No. 79-2198.
District Court of Appeal of Florida, Third District.
July 1, 1980.
Bradford, Williams, McKay, Kimbrell, Hamann, Jennings & Kniskern and Susan J. Cole, Miami, for appellant.
Barranco, Darlson, Daniel & Bluestein and Steven Kellough, Miami, for appellee.
Before BARKDULL, HUBBART and PEARSON, DANIEL, JJ.
DANIEL S. PEARSON, Judge.
In 1978, the trial court entered a judgment awarding Anna Viltz, the mother, custody of Laila Viltz, the then three-year-old daughter of the parties. The judgment prohibited the mother from removing the child from the United States in the absence of a court order. A year later Anna sought and obtained such an order, from which Thomas Viltz appeals.[1]
*1349 The father's appeal makes two contentions. He says (1) that the removal of the child from the United States would render his right of reasonable visitation illusory and effectively deprive him of his natural rights as a father; and (2) that the removal will deprive the child (as the parents, a citizen of the United States) of her birthright to be raised and educated in the United States.
The impediment to the first prong of the father's appeal is that the father raised no objection to the provision of the order allowing the mother to leave the United States with the child. Indeed, the record fairly reflects that he and his counsel acquiesced in this provision. We do not reach the merits of his first contention, since the issue was not properly preserved below. Hatfield v. Hatfield, 384 So.2d 889 (Fla. 3d DCA 1980); Commodore Plaza at Century 21, Etc. v. Cohen, 350 So.2d 502 (Fla. 3d DCA 1977); Karl v. David Ritter, Sportservice, Inc., 164 So.2d 23 (Fla. 3d DCA 1964); Collins v. Farley, 147 So.2d 593 (Fla. 3d DCA 1962).
We must, however, address his second contention that the rights of the child are being violated by the trial court's order. Since an agreement between the parties respecting the custody and maintenance of a child cannot bind a court, Frazier v. Frazier, 109 Fla. 164, 147 So. 464 (1933); Siegel v. Zimmerman, 319 So.2d 187 (Fla. 3d DCA 1975); Eaton v. Eaton, 238 So.2d 166 (Fla. 4th DCA 1970), a fortiori, the father's failure to object cannot constitute a waiver of the rights of the child.
Faced with a dearth of authority, the father relies upon O'Shea v. Brennan, 88 Misc.2d 233, 387 N.Y.S.2d 212 (Sup.Ct. 1976), for the proposition that an order which permits a parent-custodian to take up residence in another country with a child who is a citizen of the United States is, per se, not in the best interests of the child in that it deprives the child of the right to be raised and educated in the United States. We do not agree that O'Shea stands for this proposition,[2] but, if arguendo, it does, we are not prepared to adopt it. In the present case the trial court had before it substantial evidence from which it could find that it was in the child's best interest to permit the mother to move with the child outside the United States.[3] The trial court is in the best position to make this judgment, and we will not disturb its finding. Shaw v. Shaw, 334 So.2d 13 (Fla. 1976); Kern v. Kern, 333 So.2d 17 (Fla. 1976); Barnhill v. Barnhill, 353 So.2d 923 (Fla. 4th DCA 1978); O'Connor v. O'Connor, 347 So.2d 438 (Fla. 3d DCA 1977).
Affirmed.
NOTES
[1] The order, in pertinent part, gave the mother the right to remove the child from the confines of the United States. It was conditioned upon her returning the child, at her expense, to the father in the United States for two months of visitation every summer and posting a cash bond to cover any costs which might be incurred if she failed to comply with the order. The order further suspended the father's obligation to pay child support while the child was out of the country.
[2] In O'Shea, the court found that the permanent removal of the child to Australia by the remarried mother would effectively prevent visitation by the father and a denial of a continued relationship with the father would not be, under all circumstances, in the best interests of the child.
[3] The record reflects that the mother was going to Venezuela, where her family lived and where the parties and the child had previously lived for two years. The mother expressed a willingness for the father to come there to visit in addition to the summer visitation in the United States. The suspension of child support payments would provide the father with additional wherewithal for the costs of such travel. The move was not intended to be permanent. Significantly, the mother's older child by a prior marriage who had lived for some years in Venezuela was then being educated in the United States.