452 So.2d 14 (1984)
Rodney K. McINTYRE, Appellant,
v.
Nance Ruth McINTYRE, n/k/a Nance Ruth Greene, Appellee.
No. AN-449.
District Court of Appeal of Florida, First District.
April 18, 1984.
Rehearing Denied June 19, 1984.
*16 Gene T. Moss, Moss & Edwards, Jacksonville, for appellant.
Kevin V. Canipelli, Jacksonville, for appellee.
SMITH, Judge.
Appellant seeks reversal of an order modifying child custody. Under the order, custody of the parties son was changed from appellant to the appellee-mother, and the mother was permitted to take the son and the parties' second child, a daughter, to Japan where they will reside during the two-year tour of duty of the mother's present husband, a naval officer. We affirm.
Appellant cites alleged erroneous rulings on evidentiary matters, and contends that the trial judge also applied an erroneous standard in determining whether the mother's petition and supporting evidence warranted a change of custody. Appellant further argues that the evidence did not support change of custody of the parties' son to the mother, nor did it support denial of appellant's petition for change of custody of the daughter to appellant. He further complains that it was error for the trial court to fail to limit the children's residence outside Florida to the two-year period in Japan, and to require appellant to continue child support payments while the children are in Japan.
The parties were divorced in February, 1980, at which time by agreement of the parties the mother was granted custody of the six year-old daughter, and the father was given custody of the nine year-old son. In September, 1981, the mother married a Lt. Commander in the naval service, a member of the North Carolina Bar serving as a legal officer at Jacksonville Naval Air Station. The present litigation stems from the new husband's impending transfer to Misawa Air Base, Japan, where he will be stationed for a period of two years, if accompanied by dependents, or eighteen months if not so accompanied. The mother petitioned for modification to gain custody of the son, and, as required by the final judgment, requested the court's permission to remove the daughter and the son from the State of Florida.[1] In response, appellant petitioned for a modification, seeking custody of the parties' daughter.
The most critical issue of law is whether the trial court erred in misconstruing the effect of the newly amended Section 61.13(2)(b), Florida Statutes (1982), by determining that the new law changes the requirements for modification of a custody decree. The long-established rule in this state is that to justify modification, the trial court must find (1) a substantial change in circumstances and (2) that the best welfare and interests of the child will be promoted by the court's action. Sanders v. Sanders, 376 So.2d 880 (Fla. 1st DCA 1979), cert. denied, 388 So.2d 1117 (Fla. 1980); Avery v. Avery, 314 So.2d 198 (Fla. 1st DCA 1975). The question is whether the 1982 amendments eliminated the requirement of showing a "substantial change in circumstances" in modification proceedings. Before enactment of Chapter 82-96, Laws of Florida (1982), Section 61.13(2)(b), Florida Statutes, read in part as follows:
The court shall award custody and visitation rights of minor children of the parties as a part of proceedings for dissolution of marriage in accordance with the best interests of the child and in accordance with the Uniform Child Custody Jurisdiction Act. (emphasis supplied)
*17 By enactment of Chapter 82-96, the above quoted portion was amended to read as follows:
The court shall determine all matters relating to custody of each minor child of the parties as a part of any proceeding under this chapter in accordance with the best interests of the child and in accordance with the Uniform Child Custody Jurisdiction Act. (emphasis supplied)
As seen from the above, the "best interests of the child" standard, formerly applicable (by the terms of the statute) only to initial custody determinations made in dissolution proceedings, by the 1982 amendment is made applicable to "any proceeding" under Chapter 61, which obviously would include modification proceedings. The problem presented by the statutory amendment is that while the statutes provide (as they have since 1975) specific factors to be considered by the trial courts in determining "best interests of the child," (see Section 61.13(3)(a)-(j), inclusive), the statutes are silent with respect to the "substantial change in circumstances" requirement in modification proceedings.
As contended by appellant, it appears from the transcript of the hearing below that the trial court viewed the amendments as setting forth the criteria applicable to child custody decisions in modification proceedings as well as in initial custody determinations, and there is some indication from the language used by the court in discussing the amendments that he believed a "substantial change in circumstances" was no longer required for modification. Whether the trial court completely disregarded the "change of circumstances" requirement is open to some question, from a mere reading of the record, but in view of appellee's acceptance of the interpretation advanced by appellant, we are bound to address this issue.
The trial judge's assumption, if he did so assume, that the new act does away with the requirement of "change in circumstances," is in our view incorrect. As appellant points out, the new amendments retain the requirement that determination of child custody matters be made "in accordance with the best interests of the child," but the same amended section also continues to require that this determination be made "in accordance with the Uniform Child Custody Jurisdiction Act." Therefore, the Uniform Child Custody Jurisdiction Act, not merely subparagraphs (3)(a) through (j), setting forth factors "affecting the best welfare and interests of the child," must be considered. It is clear that other provisions, specifically Section 61.1326, relating to the binding force and res judicata effect of a custody decree, must also be considered. That provision reads as follows:
61.1326 Binding force and res judicata effect of custody decree  A custody decree rendered by a court of this state which has jurisdiction under s. 61.08 binds all parties who have been served in this state or notified in accordance with s. 61.1312 or who have been given an opportunity to be heard. As to these parties, the custody decree is conclusive as to all issues of law and fact decided and as to the custody determination made unless and until that determination is modified pursuant to law, including the provisions of this act.
We find no indication that the res judicata effect of custody decisions made prior to the effective date of the amendments may be disregarded. See, Avery v. Avery, supra, 314 So.2d at 200, and Teta v. Teta, 297 So.2d 642, 646 (Fla. 1st DCA 1974). On the other hand, once a change in circumstances sufficient to bring the matter before the court for redetermination has been shown, we agree with the trial court's ruling that the amended statute controls modification proceedings as well as original custody determinations.[2] Thus, *18 we find no error in the trial court's use of the "best interests of the child" standard in this modification proceeding. One of the statutory factors to be considered is the "reasonable preference of the child," Section 61.13, subparagraph (3)(i).[3] Here the trial court specifically found that both children have "indicated to their parents a preference to go to Japan which the court finds to be a reasonable preference," pursuant to the statute.
Appellant urges that the trial court's misinterpretation of the statute requires reversal. This may or may not be the case.[4] As our sister court has recently observed in Damico v. Lundberg, 379 So.2d 964, 965 (Fla. 2nd DCA 1979), the "cardinal principle" of appellate review is that error is reversible only when, considering all the facts peculiar to the particular case, it is reasonably probable that a result more favorable to the appellant would have been reached if the error had not been committed. It has also been stated, as noted by the Fourth District in Anthony v. Douglas, 201 So.2d 917 (Fla. 4th DCA 1967), that errors which do not affect the outcome of the trial are not harmful. See also, 3 Fla.Jur.2d, "Appellate Review," §§ 360-364.
Under the foregoing principles, whether reversible error is shown by the trial court's erroneous assumption that a change in circumstances is no longer a prerequisite to modification of child custody arrangements must be determined from examination of the facts and circumstances presented by this case. In this connection, we note first that the mother's motion for modification was filed before the effective date of Chapter 82-96, and in conformity with existing law; that is, the motion specifically alleged "that there have been substantial changes in the conditions and circumstances surrounding the parties" since the original custody judgment was entered, and it alleged that it would be "in the best interests" of both children if custody of the son were transferred from the father to the mother. The motion for modification reveals the mother's remarriage, the fact that her new husband had received orders from the United States Navy to proceed to Misawa, Japan, for a tour of duty, and that she planned to accompany him and desired to take the two children so that they would be together during their absence from the state of Florida. The alternative of allowing the mother to take only the daughter and of having the children change residences during the summer vacation would have meant virtual total separation of the children for the entire two year period.
This court has recently held, in Sanders v. Sanders, 376 So.2d 880 (Fla. 1st DCA 1979), that a motion for judgment on the pleadings was properly denied with respect to a supplemental complaint for modification alleging that there had been a substantial change in the mother's circumstances and that it was in the best interests *19 of the child for modification to be ordered. The mother based her complaint for modification upon a change in her financial and employment circumstances, and the evidence disclosed that she had changed jobs, remarried, and that her finances had improved to a degree. By comparison, the mother here also alleged her remarriage, her proposed temporary residency in Japan, and the need for modification to allow both children to accompany her.[5] At the same time, the mother was required to and did seek the court's permission to allow her to leave the state of Florida with the daughter, and she also appropriately requested that provision be made for reasonable visitation with the children by their father. The record reveals no motion attacking the sufficiency of her request for modification. We note also that the father subsequently filed his own motion for modification, seeking custody of the daughter, based upon the wife's proposed temporary residence in Japan.
We conclude that the pleadings before the court adequately presented a material and substantial change in conditions affecting custody of the children. Although no specific finding that a change of conditions justifying modification was made by the trial judge, such a finding is unnecessary. It is enough that the record displays it. Johnson v. Johnson, 422 So.2d 1013 (Fla. 1st DCA 1982).
The evidence establishing a change in conditions is considerably more impressive than the bare allegations of appellee's motion. For one thing, appellee was pregnant and expected to deliver shortly before her scheduled departure for Japan in October, 1982. This circumstance promised a significant family event, one that could best be shared by having all of the children under one roof. Another development of significance was the strengthening of the bonds of affection between the son and the mother. For a period immediately following the dissolution and particularly after the mother's remarriage, there was a period of estrangement between mother and son, causing the mother to experience considerable difficulty in attempting to enjoy visitation with the son. There is evidence in the record that the father, although a fit and loving parent, was accountable at least to some extent for this period of difficult relations, and it appears that he made and permitted disparaging remarks concerning the mother in the childrens' presence. It is undisputed, however, that in recent months prior to the modification hearing, the son had become reconciled with his mother, and more particularly, had begun to exhibit an appreciation for and to enjoy the experience of living in the family unit consisting of his mother, stepfather, and his sister. The anticipated addition of a new family member was a circumstance that might be expected to further enhance the quality of life the children would share with appellee and their stepfather. Appellee, a teacher, further noted the fact that she had rendered needed assistance to the son in his schoolwork, and since she did not expect to be employed while in Japan, would be available there for further assistance on a regular basis.
Both parties appeared to recognize, to a degree, the benefits the children might be expected to receive from the experience of travel and exposure to a foreign culture. The father understandably argued that these benefits could be more satisfactorily achieved by leaving them with him in Jacksonville during the school year, and by allowing visitation with the mother during their summer vacation from school. The mother's position emphasized the change in her relationship with her son, the beneficial effects of the family unit living together during the school year, and the fact that she would be available as a mother full-time. She also pointed out the potentially *20 devastating effects upon the daughter if separated from her for an extended period of time, which would have been the case if the father's request for custody of the daughter had been granted. She further urged that the childrens' travel to visit with the father during the summer months could readily be arranged, and she further offered full cooperation with the father by assisting in securing housing for him if he should desire to visit Japan.
After hearing all the evidence, which we find no need to summarize in its entirety, the trial judge was persuaded that the alternatives presented by the mother would promote the best interests of the children. Accordingly, he ordered that the primary physical residence of the son should be with the mother, and she would be allowed to take the children to Japan.
We acknowledge the serious impact upon the father's visitation rights created by the children's temporary residence in Japan. In earlier days, before the advent of modern communications and means of travel, a move even to a neighboring state could have meant severe deprivation and in some cases, as a practical matter, virtual destruction of parental access to a child. Even today, restriction of removal may be necessary to preserve parental rights, and there is no doubt that the courts retain the power to restrict the movement of children of divorced parents out of state, or out of the country  or out of a county, for that matter. Brandon v. Faulk, supra, footnote 6; Scheiner v. Scheiner, 336 So.2d 406 (Fla. 3rd DCA 1976); Costa v. Costa, 429 So.2d 1249 (Fla. 4th DCA 1983). On the other hand, there is no restriction on change of residence by a custodial parent unless such a restriction is contained in the final judgment of dissolution, and even if such restriction does appear, the custodial parent is not barred from obtaining a modification  upon a showing of a substantial change in circumstances and that it would be in the best interests of the child  approving removal of the child from the state or jurisdiction. Scheiner v. Scheiner, 336 So.2d 406 (Fla. 3rd DCA 1976); Viltz v. Viltz, 384 So.2d 1348 (Fla. 3rd DCA 1980); Giachetti v. Giachetti, 416 So.2d 27 (Fla. 5th DCA 1982); Costa v. Costa, 429 So.2d 1249, supra; Award of custody to a nonresident parent, or to one who after the dissolution will take up residence in another state, or modification of custody based on a change in parental residence, is not an unusual event. See, annotation 15 A.L.R.2d 432, "Nonresidence as affecting one's right to custody of child," and later case service supplementing the annotation. Unlike the custodial parents in Giachetti, Costa, and Brandon v. Faulk, supra, appellee here in the judgment of the trial court carried the burden of showing grounds for a change in custody and temporary residence outside the United States. Cf. Viltz v. Viltz, supra. We are not at liberty to disturb that ruling absent a showing of abuse of discretion. Dinkel v. Dinkel, 322 So.2d 22 (Fla. 1975).
We are reminded of the deference which must be accorded a trial judge's rulings on custody matters by the Dinkel court's quotation (322 So.2d at 24) from Grant v. Corbitt, 95 So.2d 25, 28 (Fla. 1957):
[T]his court cannot, in any type of case, overturn the decision of a Chancellor made in the exercise of his judicial discretion in the absence of a clear showing of an abuse thereof; and, in a child custody case, the opportunity of the Chancellor to observe the demeanor and personalities of the parties and their witnesses and to feel forces, powers and influences that cannot be discerned by merely reading the record, assumes a new importance because of the many intangibles that must be evaluated in deciding the delicate question of child custody.
In this connection we note that this was not the first appearance of these parties before the trial judge.
Finally, we are inclined to avoid sweeping generalizations concerning whether the 1982 amendments pertaining to child custody reflect a legislative purpose to make it more difficult or less difficult for a parent to change the physical *21 residence of a child to a place far removed from the residence of the other parent.[6] Under what conditions the best interests and welfare of a given child may be served by a court order aimed at preserving close physical proximity of the child to the non-custodial parent, and to what extent consideration of physical proximity may be allowed to control at the expense of other equally important factors affecting the child, in our opinion depends upon the varying facts and circumstances of each case. It seems obvious that the practical demands of a mobile society in today's shrinking world will at times collide head-on with the twin goals of maintaining a child's close relationships with both parents, and preserving to the maximum extent possible the right of both parents to retain full parental rights and responsibilities for the child. The resolution of this conflict in keeping with the child's best interests will produce one result in one case, a different result in a different case. The best result, of course, is most likely to be the one arrived at by the parents by their own mutual agreement; and that is perhaps the ultimate objective that will be achieved by the 1982 amendments and other efforts to legislatively deal with child custody issues.
Turning briefly to the remaining points raised on appeal, we find no reversible error in the trial court's rulings allowing appellee's husband to testify as to living conditions at Misawa Air Base, nor in allowing appellee to introduce into evidence what purports to be a pamphlet issued by the Department of the Navy and an Air Force newsletter containing further details and particulars concerning the area, including educational, cultural and recreational facilities available. The husband's testimony amounts to nothing more than his considered opinion as to what the family might expect in the way of living conditions at the foreign base. In order to inform himself, having never before been stationed there, he talked to other military personnel who had been, and read reports and pamphlets concerning the base. The basis for his knowledge would obviously bear on the weight and credibility of his testimony. The essential facts, however, are that the children would be residing in a peaceful, civilized, foreign country, as military dependents on a United States military base, in the care and custody of their mother. The reasonably informed opinion of one who would share in the responsibility for the well-being of appellee and the children seems to us well within the range of permissible testimony in a proceeding of this kind. We think it would add nothing to the jurisprudence of this state to expound some technical ground for the admissibility of this evidence. The trial judge has a wide latitude in ruling on admissibility of evidence, and we find no abuse of discretion in the trial court's rulings.
Upon review of the entire proceeding, we are of the opinion that the trial court's decision to change custody of the parties' son and to permit removal of the children to Japan for a two-year period of time is supported by evidence adequately demonstrating a change in circumstances and that the change is in the best interests of the children. We also find that it was not improper for the trial court to fail to limit the children's residence outside Florida to the two-year period in Japan, nor was it error to order appellant to continue child support payments while the children are in Japan.
The order appealed from is AFFIRMED.
*22 BOOTH, J., concurs.
ZEHMER, J., dissents With Opinion.
ZEHMER, Judge, dissenting.
I respectfully dissent. The appealed order modifies custody of the son from the appellant father to the appellee mother and denies a change in custody of the daughter from the mother to the father, primarily  if not wholly  out of concern that the two children be given the experience of living in Japan for a couple of years based on the children's ambiguously expressed preference. The order effectively repudiates the limitation on removing the children from Florida, contained in the final judgment, and operates to deprive the father of equal visitation rights. The appealed order, and now the majority opinion, have departed from well-established principles limiting a trial court's power and discretion to modify child custody and parental visitation rights after final judgment. In my opinion, these departures require reversal.
Approving the agreement made by both parents, the final judgment dissolving this marriage granted the mother custody of the daughter and the father custody of the son. Both parents then resided in Jacksonville. On the date of the modification hearing, the son was eleven, the daughter was nine, and the mother had been remarried for ten months.
The appealed order (set forth in full in the appendix hereof) found that "both parents are fit and proper persons to have physical residential care of the children" and that "both parents love their children and both children love their parents." Only paragraphs 4 and 5 of the order identify any grounds for modifying custody. Those grounds, simply stated, are the remarriage of the wife, her establishment of a happy, stable new family environment, an opportunity for the children to live in Japan, and an indication by the children of their preference to go there. Though not expressed in the order, it is clear from the record that the trial court determined, because of recent amendments to section 61.13, Florida Statutes, it was unnecessary to decide whether a substantial and material change in circumstances had occurred and, accordingly, gave no consideration to this essential requirement in reaching the decision to modify the custody provisions in the final judgment.

I.

SUBSTANTIAL CHANGE IN CIRCUMSTANCES
I agree with the majority opinion that the 1982 amendments (chapter 82-96, Laws of Florida) to section 61.13, Florida Statutes, are controlling on this modification proceeding and do not eliminate the long-standing requirement of showing a "substantial change in circumstances ... as one of the two essential prerequisites to modification of a child custody decree." The majority opinion also recognizes that the trial court erred in disregarding this legal requirement when it refused to make any finding of a substantial change in circumstances sufficient to warrant abrogation of the custody arrangement previously agreed to by each party and approved in the final judgment of dissolution. The majority opinion acknowledges the res judicata effect of that judgment under section 61.1326, Florida Statutes, and correctly concludes that such res judicata effect cannot be disregarded or modified unless "a change in circumstances sufficient to bring the matter before the court for redetermination has been shown."
Having correctly determined that the trial court erred in refusing to consider, under existing case law, the sufficiency of changed circumstances, the majority opinion nevertheless holds that this error is harmless. I disagree, however, because this holding is in direct conflict with Stricklin v. Stricklin, 383 So.2d 1183 (Fla. 5th DCA 1980). In that case, as in this, the trial court refused to determine whether a substantial and material change in circumstances had occurred because of its misconception that, under section 61.13, Florida Statutes, a substantial change in circumstances was no longer relevant in proceedings *23 to modify child custody. Because of this misconception, the Fifth District held that "there has been a departure from established rules, commanding a reversal." 383 So.2d at 1184.
The majority opinion declines to follow Stricklin, preferring instead to analyze the pleadings and evidence under the "harmless error" rule, citing Damico v. Lundberg, 379 So.2d 964 (Fla. 2d DCA 1979), and Anthony v. Douglas, 201 So.2d 917 (Fla. 4th DCA 1967). But neither case is persuasive authority for affirming the appealed order. In Damico, an automobile negligence claim was tried to a jury verdict in favor of the insured defendant and the appellate court held it was harmless error not to have permitted joinder of the insurance company. In Anthony, also an automobile accident case, summary judgment was entered for plaintiff on liability and the case was tried on damages only; but the jury verdict was reversed on appeal because of an erroneous instruction. In so holding, the appellate court defined harmless error as "one that does not injuriously affect the substantial rights of the complaining party" and "errors which do not affect the outcome of the trial," and concluded that "if the correct instruction had been given, the jury might have rejected plaintiff's testimony and returned a verdict for a lesser amount." 201 So.2d at 919. I cannot conceive that the refusal of the court below to consider the "essential prerequisite" of substantial change in circumstances did not affect the substantial rights of the father in this case and did not affect the outcome of the trial.
Nevertheless, to find "harmless" error, the majority have analyzed the mother's petition and concluded that "the pleadings before the court adequately presented a material and substantial change in conditions affecting custody of the children." They have analyzed the evidence, made additional findings of fact on a disputed record, and concluded that a sufficient change in circumstances is shown by the evidence. Being confronted with the admitted refusal of the trial judge to even consider change in circumstances, my respected colleagues would excuse this patent error on the supposition that "such a finding is unnecessary" because "it is enough that the record displays it," citing Johnson v. Johnson, 422 So.2d 1013 (Fla. 1st DCA 1982). Affirming the order below on this reasoning is error for several reasons.
In the first place, in Johnson the trial court's order contained only a general conclusion that the best interest of the child and substantial change of circumstances supported modification of custody from the mother to the father. The order did not articulate the particular facts supporting either finding. On appeal, we "carefully examined the record for evidence tending to show, as required for change of custody previously ordered by judicial decree, that the mother's custody substantially changed the child's living conditions in a way adversely affecting the child." 422 So.2d at 1013 (emphasis added). After reciting specific facts in the record that support a finding of substantial change in circumstances and adverse effects of the mother's move on the child, we observed that although it would have been desirable for the order to articulate such facts, it is sufficient "that the record displays them," and, "We find no suggestion here that the able circuit judge departed from the appropriate standard." Ibid. Unlike Johnson, in this case the trial judge deliberately departed from the appropriate standard when he refused to make any determination of substantial change in circumstances. Reliance on Johnson as authority for this court to make findings of fact upon a disputed factual record admittedly not made by the trial court, and then determine on the basis of that analysis that a sufficient change in circumstances was nevertheless proven, amounts to a trial de novo in the appellate court. This procedure is not proper, in my opinion, and is precisely what the court in Stricklin avoided by remanding to the trial court on the ground that the trial court's failure to make that determination "has been a departure from established rules, commanding a reversal" as *24 a matter of law. 383 So.2d at 1184 (emphasis added.)
In the second place, neither the facts alleged in the mother's petition, the findings of fact in the trial court's order, nor the additional facts found by the majority are, under well-established principles set forth in a number of Florida appellate decisions, sufficient to warrant changing custody of the son to the mother.
Some of these principles were aptly summarized in Ritsi v. Ritsi, 160 So.2d 159, 163-64 (Fla. 3d DCA 1964):
The rule applied on a petition to modify a decree for custody is that while the welfare of the child or children is of paramount concern, a final decree awarding custody to one parent, being res judicata of the matters involved and known at the time of the decree, should not be modified to change the custody to the other parent except upon materially changed circumstances, or for material facts unknown to the court at time of decree, and then only when it is shown to be essential to the welfare of the child to so order.
* * * * * *

When a father has been granted custody under a divorce decree, remarriage of the mother and acquisition by her of a suitable home are not changes of circumstances which of themselves justify a change of custody from the father to her. Phillips v. Phillips, 153 Fla. 133, 13 So.2d 922; Belford v. Belford, 159 Fla. 547, 32 So.2d 312.

Also, when by remarriage or other circumstances the mother becomes or is more affluent than the father who has custody, and thus in a position to do more financially for a child or children, that has not been considered a controlling factor unless the children are not being properly or adequately cared for. Frazier v. Frazier [109 Fla. 164, 147 So. 464], supra; Fields v. Fields, 143 Fla. 886, 197 So. 530.

A change of decreed custody is justified in such improved circumstances of the wife when coupled therewith there are circumstances relating to the present custody which are improper and harmful to the child or children so as to make it manifest that a change of custody is essential for their welfare. Phillips v. Phillips, supra; Hart v. Howell, 154 Fla. 878, 19 So.2d 317; Jones v. Jones [156 Fla. 524, 23 So.2d 623], supra. Compare Dobbs v. Kelly, Fla. 1949, 39 So.2d 479, and Prevatt v. Penny, Fla. App. 1962, 138 So.2d 537, which show examples of the rule just stated. (Emphasis added.)
Similarly, in Hutchins v. Hutchins, 220 So.2d 438 (Fla. 2d DCA 1969), recognizing that res judicata principles apply to an original divorce decree, the court stated:
While this rule [res judicata] ought not to be quite as inflexible when the welfare of the children of the parties to a divorce is concerned, it should be generally applied even in these cases if only to assure a reasonably stable environment for the children. Such a rule requires, then, in modification of child custody cases, not only that the general welfare of the children will be served by a change of custody, but that it will be detrimental to the children if custody is not changed. (Emphasis added.)
220 So.2d at 439.
To similar effect are Johnson v. Johnson, supra; Lisenby v. Lisenby, 419 So.2d 354 (Fla. 1st DCA 1982); Culpepper v. Culpepper, 408 So.2d 782 (Fla. 2d DCA 1982). In Stricklin v. Stricklin, 383 So.2d 1183 (Fla. 5th DCA 1980), the court, stated:
The order changing custody need not include a finding that the prior custodial parent is unfit. Negative factors in the circumstances of the custodial parent when coupled with the intervening special needs of the child and increased ability of the non-custodial parent to provide for the child, may be sufficient to justify change. Jayne v. Dennison, 284 So.2d 237 (Fla. 2d DCA 1973). However, the fact that the father had remarried, that the mother was working while her parents cared for the child, that she was having marital difficulties and that she *25 had changed her place of residence several times, was not sufficient to justify a change in custody absent a finding that the child was adversely affected by the conditions. Spradley v. Spradley, 312 So.2d 215 (Fla. 1st DCA 1975). Likewise, the remarriage of the non-custodial parent and the acquisition by that parent of a suitable home are not changes of circumstances which of themselves justify a transfer. Ritsi v. Ritsi, 160 So.2d 159 (Fla. 3d DCA 1964).
In the case before this court, the trial court found both parties to be physically, mentally and morally fit to care for the child. Custody, however, was transferred to the husband predicated upon a showing of a more stable environment which apparently was based on his remarriage and work success. The social investigation described the child as a healthy, happy, well-behaved child and developing in a normal fashion. (Emphasis added.)
383 So.2d at 1184.
Accordingly, the court reversed the order modifying custody and remanded for further proceedings.
The clear import of these decisions is that an essential prerequisite to modifying the custody awarded in a final judgment is the fact that the parent having custody under that judgment has undergone a change of circumstances since the final judgment which adversely affects the welfare of the child. In the absence of evidence to support such finding of fact, consideration of the changed circumstances of the noncustodial parent seeking modification is neither necessary nor relevant.
The trial court does not have the same degree of discretion to modify child custody as it does when entering an original judgment on custody. Avery v. Avery, 314 So.2d 198 (Fla. 1st DCA 1975). Unlike proceedings to modify awards of child support or alimony, the noncustodial parent seeking to modify a prior award of custody carries an extraordinary burden. Zediker v. Zediker, 444 So.2d 1034 (Fla. 1st DCA 1984). In Zediker, we reversed an order granting modification of custody because the noncustodial parent failed to carry this heavy burden of proof. We declined to apply the unusually broad standard of discretion accorded to trial judges in dissolution of marriage cases under Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980) to modification of custody proceedings and concluded that:
Our task, instead, is to determine whether the trial judge's discretion is supported in the record by competent and substantial evidence revealing that substantial or material changes in the parties' circumstances had occurred subsequent to the dissolution, and that a change of custody would promote the best interests of the children involved.

444 So.2d at 1038.
Tested by this standard of appellate review (if we do not remand for the trial court to make this initial finding), I do not believe the record contains competent and substantial evidence to support such findings. There is no evidence, and hence no finding by the trial court or in the majority opinion, that the father, as custodial parent of the son, had experienced any significant change in circumstances since the final judgment that adversely affected the welfare and best interests of the son. The decision to change custody of the son is erroneously based entirely upon certain changes in circumstances of the mother, the noncustodial parent, which are insufficient.
The mother's petition for modification alleges only her remarriage, her improved financial circumstances, that her husband (a naval officer) has received orders to proceed to Japan for a two-year tour of duty, and that she desires to accompany him and take both children with her. Unless both children go with her, she argues, the only alternative is to take the daughter to Japan and thereby create a virtual separation of the daughter and her brother for the entire two-year period. The only factors recited in the trial court's order supporting the custody change are (1) the remarriage of the wife and her establishment of a happy, *26 stable family environment, (2) the transfer of the wife's new husband to a base in Japan which offers adequate schooling and recreation facilities, and (3) the children's indication of a preference to go to Japan. Of these three factors, the first and second have been deemed insufficient. See, e.g., Stricklin v. Stricklin, supra; Ritsi v. Ritsi, supra; Costa v. Costa, 429 So.2d 1249 (Fla. 4th DCA 1983). The third factor, standing alone, is also insufficient. Burley v. Burley, 438 So.2d 1055 (Fla. 4th DCA 1983); Garvey v. Garvey, 383 So.2d 1172 (Fla. 2d DCA 1980).[1] Adding these factors together should not otherwise make them sufficient in this case.
Apparently cognizant of the insufficiency of the trial court's findings, the majority opinion makes additional findings based on unresolved disputes in the evidence. For example, the majority opinion notes the recent strengthening of the bonds between the son and his mother. Recognizing that the father is a fit and loving parent (as the majority must since the trial court found that fact and it is supported by the record), the majority opinion nevertheless points an accusing finger at the father as being responsible for the previous estrangement between the mother and her son. The majority opinion does not acknowledge the considerable evidence in the record favoring the father's position[2] and fails to mention unchallenged countervailing evidence concerning the mother's difficulties shortly after the final divorce decree, stemming in part from an alcohol problem. But, obviously, these matters did not affect the trial judge's decision, properly so under the evidence, because he unequivocally found both parents fit and capable.
The majority opinion also finds it significant that the mother, a teacher, had rendered assistance to her son regarding his school work and that she expected to be available to do so in the future. Yet the court neglects to point out, as reflected in the record, that the son had been doing well and making good grades in the Christian school he had been attending and that there was no evidence of any need for change to a new school in order for the son to obtain better grades or a better education. These latter facts negate authority to order a change in custody. Avery v. Avery, 314 So.2d 198, 200 (Fla. 1st DCA 1975).
The majority opinion states that both parents recognize a degree of cultural benefit to be derived by the children's exposure to the culture of Japan. But no showing appears in the record why such cultural benefit could not be achieved through extended visitations with the mother during summer vacations.
Most importantly, the majority opinion, like the trial court's order, fails to find that leaving custody of the son with the father would adversely affect the welfare of the child, no doubt because the record affirmatively refutes such a finding. Yet, as noted above, this fact is a critical consideration in modification proceedings.
I agree with the majority that chapter 82-96, Laws of Florida (1982), amending section 61.13, Florida Statutes, is applicable to this case. That amendment adopted the principle of "shared parental responsibility" as the public policy of Florida and amended, in part, the factors in section 61.13(3), which the trier of fact is mandated to consider and evaluate in determining custody issues and the best interest of the child. While these statutory factors do not necessarily limit or reverse the principles in the previously discussed decisions establishing *27 recognized limits on a trial court's discretion to modify custody, neither the trial court nor the majority has followed that mandate and evaluated the evidence under the statutory factors.[3]
The trial court actually considered only one of the statutory factors in awarding the wife custody of both children  "the reasonable preference of the child." § 61.13(3)(i). The majority opinion likewise refers *28 to no other statutory factor. Although preference of the child is one factor to be considered, it cannot control the disposition of custody; and where that is the only significant basis for the trial court's modification of custody, the order should be reversed. Garvey v. Garvey, supra, at 1173.
In summary, even when tested against the statutorily mandated criteria for custody, the evidence fails to support awarding the mother permanent custody of both children. The statutory factors appear to support modification placing custody of both children with the father, with long summer vacation visits with the mother while she remains in Japan or at other duty stations remote from Jacksonville.

II.

REMOVAL OF CHILDREN FROM FLORIDA
Section 61.13(2)(b) mandates that "upon considering all relevant factors, the father of the child shall be given the same consideration as the mother in determining custody." That provision was enacted to substantially increase the father's right to custody and visitation over that accorded to fathers by prior case law and to equalize both parents' visitation rights. Scheiner v. Scheiner, 336 So.2d 406, 408 (Fla. 3d DCA 1976). Consistent with this policy, and pursuant to the parents' agreement, the final judgment provided that the mother should have custody of the daughter and the father custody of the son, that both parents should have liberal visitation rights, and that neither parent should remove a child from the state of Florida without the consent of the other party or an order of the court. This latter provision against removal insured that the children would remain close to each other and to both parents, facilitating the children's development of good parental and sibling relationships. When one parent determines to move beyond the state of Florida and take the resident child with him or her, in contravention of such a limitation, that party bears a heavy burden to justify removal and the virtual destruction of the other parent's visitation rights resulting therefrom. See, e.g., Costa v. Costa, 429 So.2d 1249 (Fla. 4th DCA 1983); Scheiner v. Scheiner, 336 So.2d 406 (Fla. 3d DCA 1976); Giachetti v. Giachetti, 416 So.2d 27 (Fla. 5th DCA 1982).
In Costa, the court enforced such a limitation and observed, at 1251:
Both of these parents have a fundamental, continual and permanent obligation to these children that can only be satisfied by the love and attention the close proximity of the two of them can provide at this time. The court can best serve the children's interest by making it possible that this occurs; thus, the wisdom of the restriction in the final judgment  which is supported by substantial authority. (Citations ommitted.)
Reversing an order which allowed the mother to remove her child from Florida in order to follow her husband to Pennsylvania, where he had secured new employment, the court summarized its holding, in part, 429 So.2d at 1253:
The significance of the present case lies in calling attention to the lawyers and judges of this district the public policy of this state newly expressed by the legislature; and in its recitation of conventional, historical principles of law  the sole factors which govern this case  that when a final judgment of dissolution expressly restricts removal of children from Florida, in order to effect a subsequent elimination of that restriction, there must not only be established, by substantial competent evidence, a material change of circumstances, but also that the elimination is in the best interest of the minor children involved.
The evidence upon which the general master and successor trial judge eliminated the restriction against removal in response to the mother's subsequent petition for modification of the final judgment was the fact that the mother's new husband could get a job in the northeast that paid him $2.00 an hour more than he had been getting in south Florida. There *29 was a complete failure on the part of the mother to produce substantial competent evidence that a material change in circumstances had occurred since the original trial judge entered final judgment only months before; and there is nothing in this record to support the general master's conclusion that `equities' compelled the modification that was ordered.
The majority opinion would distinguish Costa and similar decisions upon the simple assertion that, unlike those cases, here the mother "carried the burden of showing grounds for change in custody and temporary residence outside the United States." I cannot agree that such decisions can or should be so lightly distinguished.
The majority opinion wisely avoids "sweeping generalizations" concerning the effect of the 1982 amendments to section 61.13, Florida Statutes. I agree with my colleagues' conclusion that "the best result, of course, is most likely to be the one arrived at by the parents by their own mutual agreement; and that is perhaps the ultimate objective that will be achieved by the 1982 amendments and other efforts to legislatively deal with child custody issues." In this case, the parents agreed to a child custody arrangement. That agreement was approved and implemented by the trial court's final judgment of dissolution. It should not be disturbed until shown to be detrimental to either child because of a substantial change in the custodial parent's circumstances. Only by following this rule can the trial courts of this state preserve the res judicata effect due the original judgment and insure a respectable degree of uniformity and predictability of result while maintaining needed flexibility to alter child custody when circumstances require.

III.

EVIDENTIARY QUESTIONS
The trial court permitted the mother's husband to give hearsay testimony concerning living conditions, educational opportunities for the children, and other matters relating to his new tour of duty at Misawa Air Base in northern Japan. The trial court also admitted as substantive evidence certain hearsay documents not properly authenticated. The court's opinion does not directly hold that such evidence is admissible under the evidence code, but suggests instead that in child custody proceedings the rules may be relaxed and the parties permitted to prove the relevant facts in a more informal manner. I cannot agree. Every child custody proceeding is an extremely important matter which should be determined only upon competent evidence properly admitted in accordance with the applicable rules of evidence. Such proceedings, as here, often result in the virtual destruction of one parent's custody and visitation rights. In essence, the appellee's brief has conceded that the testimony of appellee's husband was inadmissible hearsay and, instead, argues that appellant waived the objection by not moving to strike such testimony after being admitted over objection, citing two Florida cases more than sixty years old. That such a motion is no longer necessary to preserve the objection needs no citation of authority.
Nor is the husband's testimony admissible as opinion testimony, as suggested in the majority opinion. The witness was not qualified as an expert under section 90.702, Florida Statutes, and the testimony was not admissible as lay opinion under section 90.701 because, admittedly, it was not based upon the witness's personal perception (he had not been to Japan) and required special knowledge and skill which the witness clearly lacked.

IV.

REFUSAL TO LIMIT CHILDREN'S ABSENCE FROM FLORIDA TO TWO YEARS
The trial court refused to limit the children's residence outside Florida to the contemplated two-year stay in Japan. Failure to include that condition in the order voided, for all practical purposes, the original limitation on residence provision in the final judgment and permanently divested the father *30 of any realistic and reasonable rights of custody and visitation. As things now stand, the mother has permanent custody of both children and the father must prove a substantial change in circumstances in order to again modify the present custody arrangement. The trial court, believing that requirement to have been eliminated by the recent statutory amendments to section 61.13, may well have omitted a two-year restriction on absence from the state based on the mistaken belief that he could again modify custody arrangements regardless of any demonstrated change in circumstances. This alone precludes a finding of harmless error and compels adherence to Stricklin, supra. At the very least, the trial court should now be given the opportunity to reconsider imposing this condition in light of this court's opinion expressly stating that a noncustodial parent must prove a substantial change of circumstances to obtain modification of custody.
The trial court order has given the mother primary residential responsibility for the children, except during the summer without regard to where her residence may be. Perhaps the trial judge contemplated the return of the mother and children to Florida at the end of the tour in Japan.[4] The wife's husband testified that he took this new assignment in order to enhance his professional military career because his career would not be furthered by his remaining in Jacksonville. If this be so, the prospect of returning to Jacksonville after two years is unrealistic at best. The far greater probability is that the mother's husband will be assigned duty in a billet commensurate with his advancing rank and experience, probably in Washington, DC, or another major naval installation far removed from Jacksonville. Should she and her husband, for example, return to Washington after the tour in Japan, that move should not amount to a substantial change of conditions sufficient to again modify custody because that eventuality was necessarily known and contemplated at the time the custody modification order was entered.
The father's visitation rights now depend entirely upon his financial ability to afford substantial travel expenses for himself and the children. The record indicates these parents are of modest means. The modification order awarding the mother permanent custody of both children and authorizing their removal from Florida flies directly in the face of the purpose of section 61.13 to assure the father equal consideration with the mother in all custody and visitation matters in accordance with the recently adopted policy of shared parental responsibility. But such equality of consideration, protected in the original decree by limiting removal of the children from Florida, no longer exists under the modification order.
I respect the obvious concern expressed by the trial court for the welfare of these children. I likewise respect my colleagues' attempt to find legal justification for affirming the order, despite the trial court's obvious error in failing to follow the applicable law, especially since the modification order was not stayed and presumably the children have now been in Japan for more than a year. But I am greatly concerned about the precedential effect of the majority decision on this area of the law. I believe that the majority opinion constitutes such a substantial departure from heretofore well-established principles governing custody modification that neither parents, lawyers, nor judges will be able to predict with any semblance of certainty what changed circumstances warrant modification of custody. The majority opinion necessarily leaves that determination to the unlimited discretion of the trial judge to be *31 governed only by their personal views, preferences, and predilections. Cf., Sanders v. Sanders, 435 So.2d 372, 375 (Fla. 5th DCA 1983) (Cowart, J., dissenting).
Our common law system is sound because of its flexibility to modify and grow as it deals with changing circumstances and legal precepts. But that system of law cannot long remain successful and held in respect by those it governs unless the system affords a substantial degree of certainty, predictability, and uniformity of result in similar cases. To a great extent, this objective is attained through the doctrines of stare decisis, res judicata, and law of the case. Predictability and uniformity of result is also attained in equity cases through adherence to decisions that define factual limits on the discretion reposed in trial courts. Predictability and uniformity of result remains as important in domestic relations cases as in other civil matters. Appellate decisions that erode or eliminate such limits on discretion do not achieve but, rather, frustrate the pursuit of uniformity and predictability that is so essential.
I would reverse the modification order and remand for further consideration by the trial court consistent with this opinion.

APPENDIX
The appealed order provides:
This cause came on to be heard on July 20, 1982, on the former wife's Motion to Modify Final Judgment and Order on Motions, and her Petition to obtain written permission of the court to remove children of the parties outside the State of Florida, and the former husband's Amended Motion to Modify Final Judgment dissolving the marriage.
Having considered the testimony of the parties and their witnesses, evidence and argument of counsel, the Court makes the following findings:
1. Section 61.13, Florida Statutes, as amended this year effective July 1, 1982, is applicable and provides that it is now the public policy of Florida to encourage parents to share the rights and responsibilities of child-rearing and to confer so that major decisions affecting the welfare of their children will be determined jointly. In ordering primary physical residence the court shall consider and evaluate all factors affecting the best welfare and interests of the children, including their reasonable preference as to the parent with whom they wish to reside.
2. Both parents are fit and proper persons to have physical residential care of the children. In an agreement prior to the Final Judgment they stipulated that each should have custody of one of their children.
3. Both parents love their children and both children love their parents.
4. The former wife has remarried since the entry of the Final Judgment and has now established a happy, stable family environment. Her new husband can advance his naval career by assignment as legal officer in Misawa, Japan, at a military base which affords both the children adequate schooling and recreational facilities.
5. Both children have indicated to their parents a preference to go to Japan which the Court finds to be a reasonable preference pursuant to Ch. 61.13(3)(i), Florida Statutes, therefore,
IT IS ORDERED:
1. That the former husband's Amended Motion to Modify Final Judgment of Dissolution of Marriage to be granted custody of Kathryn Grace McIntyre is denied.
2. That the former wife's Motion to Modify Final Judgment and Order on Motions regarding custody of Rodney Keith McIntyre, Jr., is granted.
3. That the former wife's Petition to obtain written permission of the court to remove both children of the parties outside the State of Florida is granted, so that the children may accompany their mother and stepfather on his military tour of duty in Japan, the Court having been assured that Florida is to continue to be the permanent residence of the former wife and the children.
4. That the primary physical residence of Kathryn Grace McIntyre and Rodney *32 Keith McIntyre, Jr., shall be with the former wife for the next two years and thereafter until otherwise agreed upon by the parties or until further order of the Court.
5. That the physical residence of Kathryn Grace McIntyre and Rodney Keith McIntyre, Jr., when they are out of school for the summer months during 1983 and 1984 shall be with the former husband during a period of time to be agreed upon; however, if a time period cannot be agreed upon, then for a period of 60 days to be selected by the former husband who shall notify the former wife in writing during the month of May in 1983 and in 1984 regarding his selection of dates for beginning and ending summer visitation.
6. When the summer visitation has ended in 1983 and in 1984 the former husband shall make arrangements to return both the minor children to the former wife.
7. Both parents shall have shared parental responsibility in the following areas of decision making regarding both the children:
(1) residential and child care;
(2) education;
(3) religious training;
(4) discipline;
(5) moral/values formation;
(6) medical and dental care;
(7) social/extracurricular activities;
(8) recreational activities;
(9) legal care;
(10) financial care;
(11) travel/transportation.
However, if the parties are unable to agree on any one or more of the enumerated areas of decision making, then the former wife shall have primary responsibility for Kathryn Grace McIntyre and Rodney Keith McIntyre, Jr., in all areas of decision making on which the parties are unable to reach an agreement while she has their primary physical residential care, and the former husband shall have such primary responsibility for Kathryn Grace McIntyre and Rodney Keith McIntyre, Jr., while they reside or visit with him pursuant to this Order.
8. Paragraph 3 of the Court's Final Judgment dated February 5, 1980, is amended as follows:
`3. Husband shall pay the sum of $245.00 per month to the wife for the support of Kathryn Grace McIntyre and Rodney Keith McIntyre, Jr. Said sum shall be payable on the 15th day of each month to the wife through the Domestic Relations Depository along with the applicable service charge beginning on August 15, 1982, and continuing on each and every month thereafter until both Kathryn Grace McIntyre and Rodney Keith McIntyre, Jr., become 18 years of age, die, marry or become self-supporting.'
9. Both parents shall share equally the expense to transport the children in the summer months between Japan and Jacksonville, Florida.
10. The former husband shall return Kathryn Grace McIntyre and Rodney Keith McIntyre, Jr., to the former wife 14 days prior to the 1982 departure date for Japan.
11. Before the children are returned to the former wife to prepare for departure to Japan, the custody and visitation shall be shared and the children should be transported freely between the parents if they can agree upon physical residential care; however, if they are unable to agree, they shall continue to obey the Order on Motions regarding visitation entered by the Court on April 20, 1982. Both the parents, during the summer months visitation in Jacksonville, Florida, shall attempt to provide visitation time with the maternal and paternal grandparents of the children.
ORDERED in Chambers at Jacksonville, Duval County, Florida, this 30th day of July, 1982.
ON MOTION FOR REHEARING PER CURIAM.
Appellant's motion for rehearing is DENIED.
*33 BOOTH and SMITH, JJ., concur.
ZEHMER, J., dissents, with opinion.
ZEHMER, Judge, dissenting.
I dissent from the denial of rehearing.
In his motion for rehearing, Rodney K. McIntyre, appearing pro se,[1a] complains that although the majority opinion recognizes that the lower court applied an incorrect legal principle regarding change of custody, it fails to remand to the trial court for application of the correct principle to the disputed evidence. Appellant professes an inability to understand why the majority cites Stricklin v. Stricklin, 383 So.2d 1183 (Fla. 5th DCA 1980), which reversed and remanded in this identical situation, and then does not follow that decision. In characteristic lay terms, he complains that "the factual reasons for not reversing are fuzzy and the legal reasoning applied by the court is illogical." For the reasons stated in my dissenting opinion, I would grant the rehearing.
NOTES
[1] Paragraph 12 of the final judgment of dissolution provided: "Neither party shall remove or aid, encourage or initiate the removal of the children beyond the boundaries of the State of Florida for any period of time that will conflict with the other party's custodial or visitation privileges and responsibilities without first obtaining written permission of the other party or the court."
[2] In addition to introducing the new concept of "shared parental responsibility," the 1982 amendments to Section 61.13 added one additional factor (subsection (3)(a)) to be considered in determining the best interests of the child. In our opinion the amendments are primarily "remedial" in nature, and there would be no prohibition against their retrospective application. See, 30 Fla.Jur., "Statutes," § 152, pp. 321-322. See, also, Ryan v. Ryan, 277 So.2d 266 (Fla. 1973), holding that the 1971 "no-fault" dissolution of marriage law applies retroactively to existing marriages. In addition, Chapter 82-96, § 3, provides that the new provisions shall be applicable to all proceedings under Chapter 61 that are pending on the effective date of the act, July 1, 1982. Cf. Malchiodi v. Malchiodi, 431 So.2d 301 (Fla. 3rd DCA 1983), indicating that the new act has no retroactive application to judgments which became final prior to July 1, 1982, the effective date of the amendments. We would agree that the new act does not in itself create new grounds for modification of existing custody judgments. See, Judge Lewis M. Kapner, "Shared parental responsibility: Questions and answers," The Florida Bar Journal, March (1983), p. 163. However, if grounds for modification otherwise exist, it is our conclusion that the new provisions would guide the actions of the trial court in providing a remedy.
[3] The reasonable preference of the child is but one of the statutory factors. Standing alone, this factor does not warrant a modification of custody. Elkins v. Vanden Bosch, 433 So.2d 1251 (Fla. 3rd DCA 1983).
[4] Cf. Stricklin v. Stricklin, 383 So.2d 1183, 1184 (Fla. 5th DCA 1980), in which the District Court held that the trial court's error in holding that the law no longer requires a change in circumstances was "a departure from established rules," commanding a reversal.
[5] We caution that as a general rule the mere fact of remarriage and improved circumstances of the non-custodial parent will not be considered as providing sufficient grounds for modification of custody. See, e.g. Sanders v. Sanders, supra; Wiggins v. Wiggins, 411 So.2d 263 (Fla. 1st DCA 1982); Stricklin v. Stricklin, supra, footnote 5. Cf. Prevatt v. Penney, 138 So.2d 537 (Fla. 2nd DCA 1962); Brandon v. Faulk, 287 So.2d 714 (Fla. 1st DCA 1974).
[6] Although we find no necessity to agree or disagree with these opinions and comments in the disposition of the case, see, Judge Glickstein's thoughtful majority opinion in Costa v. Costa, supra, and Judge Anstead's equally reflective dissenting opinion. Note also the comment in Scheiner v. Scheiner, supra, 336 So.2d at 408, that the Dissolution of Marriage Act of 1971 "substantially increases a father's rights to custody and visitation." The view has also been expressed that the 1982 amendments to Chapter 61 make it more difficult for the primary residential parent to move out of state, since the new law greatly expands the alternate parent's rights, thus imposing a greater burden of proof upon the moving parent. Kapner, "Shared parental responsibility: Questions and answers," The Florida Bar Journal, March (1983), p. 163.
[1] In Garvey v. Garvey, supra, the court reversed an order modifying custody, stating:

In fact, the only basis for the trial court's modification which is apparent from the record is that Michael had stated a preference to live with his father. Although the preference of a child is one factor to be considered, it cannot control the disposition of custody. Gall v. Gall, 336 So.2d 10 (Fla. 2d DCA 1976).
(383 So.2d at 1173).
[2] The mother, for example, admitted that if the children were to remain in Jacksonville with their father while she and her husband were in Japan, they would go to a good school and a good church, participate in family oriented activities, and be able to see their grandparents and other family members. She offered no evidence that the father was a poor or unfit father or that the children had suffered or would suffer any adverse effects in his custody.
[3] A brief evaluation of the record with respect to each of the ten statutory factors listed in section 61.13(3)(a) through (j) does not support awarding custody of both children to the mother:

(a) The parent who is more likely to allow the child frequent and continuing contact with the nonresidential parent.
This ground was added by the 1982 amendment. As previously noted, the mother  not the father  is unnecessarily preventing the children from continuing to have frequent periodic contact with each other, both parents, and other family members in Jacksonville. There is no assurance that the mother will return to Jacksonville after her husband's tour in Japan is completed or, for that matter, that she will ever return to Florida rather than follow her husband to another duty station geographically remote from Jacksonville. There is no evidence that the father would not permit visitation with the mother. Since the mother is responsible for ending the children's frequent and continuing contact with each other and with the father, this factor does not favor awarding permanent custody to her. See, Costa v. Costa, 429 So.2d 1249 (Fla. 4th DCA 1983).
(b) The love, affection, and other emotional ties existing between the parents and the child.
The trial court explicitly found that both parents love and are loved by the children, so this factor does not weigh more heavily in either party.
(c) The capacity and disposition of the parents to provide the child with food, clothing, medical care .. . and other material needs.
Again, the trial court found both parents fit and proper persons to have physical custody on the assumption that both could provide for these needs; hence, this factor also favors neither party.
(d) The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.
The son has lived with the father since birth. Both children have lived in Jacksonville since birth, have family and friends in Jacksonville, have gone to school and church there, etc. Removing them to Japan will disrupt, not preserve, the desirable continuity recognized by this factor. Moreover, if the mother and her husband do not return to Jacksonville after the tour in Japan, but proceed to new and distant duty stations, this factor further militates against the mother and would appear to favor the father.
(e) The permanence, as a family unit, of the existing or proposed custodial home.
The mother was recently married (ten months at the time of the hearing), was about to move to a new and uncertain environment, housing, and family situation in Japan, and after two years in that location move to further uncertainty. By contrast, the father's home situation has remained relatively constant with no significant change indicated that would adversely affect either child. This factor appears to slightly favor the father.
(f) The moral fitness of the parents.
The trial court found both parents to be fit and proper persons. As this finding is supported by competent evidence, this factor favors neither party.
(g) The mental and physical health of the parents.
This factor is likewise governed by the trial court's finding that both are fit and favors neither party.
(h) The home, school, and community record of the child.
Both children were doing well in their existing home, school, and community environment. Both had friends and family in Jacksonville, attended church with each parent, and were performing satisfactorily in school and athletic activities. Whether this would continue in the new and uncertain environment in Japan and subsequent duty stations is unknown and problematical. Gauged by certainty against uncertainty, this factor appears to favor custody of both children in the father.
(i) The reasonable preference of the child...
The trial court explicitly found the children preferred to make the trip to Japan and live with the mother. However, it should be noted that the children did not testify. The record reflects that the son merely said to one of the witnesses that he wanted to experience the adventure of going to Japan. The mother stated that the daughter was "wishy-washy" and would tell either parent what he or she wanted to hear. The evidence was substantially less than a clear, unambiguous expression of preference to live with the mother rather than the father if, indeed, the evidence was legally competent to support this finding.
(j) Any other factor considered by the court to be relevant to a particular child custody dispute.
The majority of the findings by the trial court and the majority opinion apparently falls in this category. But, as demonstrated previously, such facts are insufficient to permit modification for purposes of removing the children to Japan.
[4] The trial court recited in paragraph 3 of the order that the court had been "assured that Florida is to be the permanent residence of the former wife and the children." But it should be noted that "permanent residence" of military personnel and "actual physical residence" are not synonymous and most often are not the same. The family may well claim Florida as their permanent residence no matter where the husband is assigned and physically resides with the family while on active duty.
[1a] Appellant represents that, "Since I do not have adequate funds to retain my attorney at this time, I am now representing myself." It does not appear that appellant is schooled in the practice of law.