539 So.2d 522 (1989)
Laurie Beth TESSLER, N/K/a Laurie Beth Major, Appellant,
v.
Eric Neil TESSLER, Appellee.
Nos. 88-1558, 88-2427.
District Court of Appeal of Florida, Fourth District.
March 1, 1989.
Rehearing and Rehearing Denied April 6, 1989.
Jerry B. Schreiber, Miami, and John Beranek of Klein & Beranek, P.A., West Palm Beach, for appellant.
Donald G. Criscuolo of Genet & Milner, North Miami Beach, for appellee.
Rehearing and Rehearing En Banc Denied April 6, 1989.
STONE, Judge.
This is an appeal from a modification of the child custody provisions of a final judgment of dissolution. The judgment initially provided for shared parental responsibility with the mother as the residential parent. The modification granted the father sole custody. We affirm.
The trial court, in a full week of trial, heard extensive evidence concerning the difficulties between the parties as they affected the conduct and exercise of visitation. The evidence included testimony about the conduct of the parties, including references to specific incidents. There was also expert testimony by psychologists presented by each side, including an independent expert appointed by the court.
The court found that there had been a substantial change in circumstances impacting on visitation, and that the mother's conduct, which had become increasingly more erratic, aggressive and antagonistic, was detrimental to the child's best interest. The court found that this conduct included the mother using every means at her disposal to prevent meaningful visitation. The judge found her conduct to be willful, and that she intentionally attempted to alienate the child's affections towards the father.
There was evidence that the mother's conduct was highly emotional, and of a history of arguments and disputes in the presence of the child. There was evidence that the mother admitted filing false rape charges against the husband and attempting to have them publicized. She also tried to have him arrested on other charges that the father contends were not justified by the facts. There was testimony of efforts to frustrate visitation and of the mother's *523 intent to interfere with the child's relationship with her father. The court specifically found that shared parenting was detrimental to the child.
We recognize the heavy burden required for custody modification and that the trial court does not have the same degree of discretion in modification that it does at the time of the final judgment. E.g., Baker v. Baker, 360 So.2d 19 (Fla. 4th DCA 1978), cert. denied, 366 So.2d 879 (Fla. 1979). Clearly, interference with court orders alone, in the absence of substantial evidence of impact on the child, is more appropriately remedied by use of contempt rather than modification. See Breeding v. Breeding, 515 So.2d 374 (Fla. 4th DCA 1987); Crippen v. Crippen, 508 So.2d 1339 (Fla. 4th DCA 1987). See also Doran v. Doran, 212 So.2d 100 (Fla. 4th DCA), cert. denied, 218 So.2d 174 (Fla. 1968). However, here there is sufficient testimony in the record, albeit disputed, to support the findings and conclusion of the trial court that there had been a substantial change in circumstances, and that the best interest of the child was promoted by the custody modification. Upon a review of the record, we cannot say that there was an abuse of the trial court's discretion. Cf. Cole v. Cole, 530 So.2d 467 (Fla. 5th DCA 1988); Jones v. Vrba, 513 So.2d 1080 (Fla. 5th DCA 1987); Baker v. Baker; Wilson v. Wilson, 504 So.2d 1278 (Fla. 1st DCA 1986); McIntyre v. McIntyre, 452 So.2d 14 (Fla. 1st DCA 1984).
Additionally, we find any error in admitting privileged information in the psychologists' testimony, even if not within the waiver provisions of section 491.0147(3), Florida Statutes, to be harmless. Cf. Cadillac Fairview of Florida, Inc. v. Cespedes, 468 So.2d 417 (Fla. 3d DCA), rev. denied, 479 So.2d 117 (Fla. 1985). We find no error in the other issues raised.
The modification of the final judgment is affirmed.
GLICKSTEIN, J., concurs specially with opinion.
WALDEN, J., dissents with opinion.
GLICKSTEIN, Judge, concurring specially.
I agree with the analysis and conclusion of the majority opinion and write to inform the trial court and domestic relations counsel of some concerns.
I believe it critical for this child to have the benefits of (1) a guardian ad litem trained in dissolution matters, not just dependency proceedings; (2) required parental training and therapy for her parents; (3) an effective alternative dispute resolution procedure, monitored and supervised by the trial court for future disputes; and (4) vigorous control by the trial court, through its inherent authority to protect children, of the child's parents, when they are perceived to be out of control as it affects the child.
That this child has not been harmed by the episodic warring of her parents is fortuitous, rather than logical. The mother's conduct has occasioned the trial court's action, the correctness of which action is not to be discounted by a reviewing court when it assumes jurisdiction. The father's previous conduct warrants all of the protective means described above, as well. The trial court must be tough on parents whose conduct before, during and after dissolution goes out of control or becomes infantile, and affects the well-being of their offspring. Appellate courts must bolster trial courts' efforts to curb the deleterious effects on children of bitter squabbles between inadequate parents. This affirmance is a positive signal to the trial courts.
I hope the domestic relations bar will pursue a vigorous, responsible role in dissipating uncontrolled domestic situations, support the trial court's rigorous orders for the children's protection, notwithstanding the protests of the out-of-control adults, and not become infected with the acrimony of their clients in dealing with their opposing counsel.
Finally, because of my mention herein of requiring parenting education to protect the children, I call to the attention of bench and bar the newest addition to the children's library here at the court  Why *524 Good Parents Have Bad Kids: How to Make Sure That Your Child Grows Up Right (1989), by E. Kent Hayes, Co-Director, National Menninger Youth Advocate Project (creator of CHARLEE, an acronym for Children Have All Rights). The author underscores that "husbands and wives who do not love each other produce disturbed kids." What he says in the context of an ongoing marriage, in my view, presents a caveat to parents respecting their conduct during and after dissolution of marriage.
The author says:
It is difficult to overstate the value of living in a household with loving parents. When affection, respect, and love are present in a marriage, the children are secure and happy. People can ignore practically all the other parenting issues and still end up with a dandy kid if they are truly committed to each other. I might add that I have never seen a happily married couple with a shortage of nurturance for their children. The children who witness these secure relationships are blessed and thrive, but those exposed to an environment of anger and hostility are caught in a trap from which it is impossible to escape.

Id. at 196 (emphasis added).
The record here shows the wife's conduct made visitation by the father here a threat to the child's well being. The trial court exercised its judgment in finding a way to eliminate the uncontrolled hostility while assuring ongoing contact by the child with both parents. Future monitoring by a trained guardian ad litem, together with the required parenting education and therapy of both parents, which I suggest, will give the child an opportunity to dissipate the harm already done by her parents' past hostile confrontations. The trial court was not obliged to wait to see the child physically harmed by out-of-control parents' anger directed at each other.
We seldom think that improving and maintaining the relationship with one's mate is an essential ingredient in raising healthy children. Children feel secure when their parents are happy with each other. Children who feel secure seldom commit crimes or need to abuse others to meet their own needs.
Conversely, parents who do not have a healthy relationship create unspeakable problems for their children, the most destructive of which is the children's conviction that they are the cause of their parents' misery.
Hayes, supra, at 197.
The author's conclusion says it nicely:
It is difficult for youngsters to grow up when their parents are too preoccupied to parent. Psychiatrists and psychologists have come up with a new parent-child concern. Today's buzz word in mental health is "bonding." They say that children are not bonding with their parents.
The truth is that kids can't bond with a moving target. They can't become attached to someone who is not there, or is only occasionally there. Parents who are preoccupied with their jobs, themselves, or their problems are not available to their children.
Id. at 204. Hopefully, someday these parents can and will be taught to put their child before their feelings toward each other. As the author says to all parents about their children, "Your compatibility is their security." Id. at 199. Reading the subject book might be a first step for these parties, whose single-issue war here took five days to wage in the trial court, resulting in a decision, not an armistice. It is time for them to heed some of the author's words of wisdom:
Children thrive in homes where their mothers and fathers love one another. Children are destroyed in homes where the only bond is a mutual hate and distrust.
If your house is broke, fix it.
Id. at 201.
WALDEN, Judge, dissenting.
Essentially the problem reflected in this record is the animosity of the mother against the father and vice versa, with particular reference to child visitation conflicts. However, I feel that such misconduct should be controlled by the trial court *525 via sanctions such as fines and contempts rather than by punishment of a parent in the form of changing custody provisions. From my review, I do not feel that there has been a sufficient showing that the parties' misconduct was deleterious as concerns the child and the child's welfare. Of course, and it goes without saying, the squabbling between the parents was undesirable and unpleasant. It is my memory of the oral argument presentation that counsel asserted that the child was doing well and prospering regardless, or in spite of, the difficulties between her parents.
I would reverse and reinstitute shared parental responsibility with the mother as the residential parent as provided in the final judgment. See Crippen v. Crippen, 508 So.2d 1339 (Fla. 4th DCA 1987); Zediker v. Zediker, 444 So.2d 1034 (Fla. 1st DCA 1984); and Doran v. Doran, 212 So.2d 100 (Fla. 4th DCA), cert. denied, 218 So.2d 174 (Fla. 1968).