DOWNEY, Judge.
This is an appeal of a post-dissolution order modifying the child custody provisions of a final judgment of dissolution entered March 1, 1986. The custody provisions of the judgment were based upon an agreement of the parties.
The parties had three minor children whose approximate ages were 12, 11 and 6 at the time of the motion to modify. Based upon an agreement of the parties, the final judgment granted primary custody of the children to the mother, subject to the father’s right to have the children reside and visit with him. As the court noted in its final judgment of dissolution, “there has been a constant battle between the parties as to the former Husband’s rights of visitation.” This phase of the proceeding commenced when the father filed a petition for contempt and for injunction and change of custody of the youngest child, Mark, which the trial court treated as a petition for modification. The mother filed an answer seeking to restrict the father’s visitation with the children, and (as a result of the agency’s having been appointed to make a social investigation into the welfare of the children) the Department of Health and Rehabilitative Services sought to have the children declared dependent.
The evidentiary hearing leading to the order being reviewed consumed approximately ten days, during which the mother adduced the testimony of several doctors, several of Mark’s teachers, and a detective, in addition to the three children. The father presented the testimony of five lay persons and the reports and testimony of the former guardian ad litem for the children and a juvenile and family court counselor. Thus, there was abundant testimony amassed in favor of each side. Essentially, the mother charges the father with sexually abusing the children, particularly Mark. On the contrary, the father denies any such conduct, but charges the mother with emotionally abusing the children by orchestrating an alleged pattern of sexual abuse by the father and coaching the children to lie to various persons about the father’s conduct with them. According to the father, she attempted to thwart his visitation rights at every turn, and then lodged sexual abuse charges against him just prior to court appearances to enforce visitation.
After hearing the witnesses and their presentation of conflicting facts, the trial judge entered a well-considered eight page order setting forth various findings of fact and legal conclusions. On the critical issue of visitation, the court described the father’s visitation experience as follows:
The Former Wife has consistently disobeyed this Court’s orders on visitation. Her behavior in interfering with visitation has, on occasion, amounted to emotional abuse of the minor children.
* * * * * ' *
The Former Husband’s experience in attempting to exercise his visitation privileges since the Final Judgment has been *584 one horror after another. It seems too coincidental to be coincidence that sexual abuse charges by the Former Wife against the Former Husband immediately precede Court hearings relative to the Former Husband’s attempts to obtain custody or enforce visitation privileges.
The court also recounted several examples of the mother’s efforts to thwart visitation. In one, she told Mark that the police were coming to put him in jail. Whereas, in fact, the police were present to assist only in the enforcement of the father’s court-ordered visitation. The court found that the mother’s false suggestion terrified the child. On another occasion, she had the father arrested in Boca Raton on charges of sexually abusing Mark. The trial court found the charges untrue. In sum, the court concluded from the evidence that the mother’s charges of sexual abuse were false, and that the children were coached and influenced to make those statements simply to preclude visitation. These conclusions find additional support in the report of the Guardian Ad Litem, wherein it is stated:
As you are well aware, this father, over the past several years, has been investigated by H.R.S., the Child Protection Team, the Sheriff’s Office, the State’s Attorney’s Office and the Guardian Ad Litem program. All concur that sexual abuse of these three minor children, by the father, is highly unlikely. However, it appears that every time there is a modification of visitation new allegations of sexual abuse are subsequently made by Mrs. Pallay against the ex-husband.
A counselor from the Juvenile and Family Division of the Circuit Court similarly reported:
The most important issues involved in this case are the very prolonged entrenched disputes regarding alleged sexual assaults of Mr. Pallay of Mark and formerly, Yvette. I have not been personally told by the children of the latest assault in April. Thus, I cannot make no [sic] comment about this. However, in evaluating the charges made to me by the children, I felt that there was a lack of true credibility.
Furthermore, a minister associated with the family testified that Mark had told him that his mother and “Uncle Roland” instructed him to tell his teachers that his father had sexually abused him.
As indicated above, there was strong evidence adduced by the mother to demonstrate sexual abuse of the child. Standing alone, it would have carried the day. However, the trial judge, after listening to all of the witnesses, was unequivocal in concluding that this scenario was manufactured by the mother and was absolutely untrue. On this point the case is not unlike Tessler v. Tessler, 539 So.2d 522 (Fla. 4th DCA) rev. denied, 549 So.2d 1014 (Fla.1989), wherein this court had a similar issue before it and found that the mother used every means at her disposal to prevent meaningful visitation; that the conduct was willful; and that the mother intentionally attempted to alienate the child’s affections toward the father. Id. There was also evidence that the mother admitted filing false rape charges against the father and that she also tried to have him arrested on other charges. Id. On appeal, this court stated:
[H]ere there is sufficient testimony in the record, albeit disputed, to support the findings and conclusion of the trial court that there had been a substantial change in circumstances, and that the best interest of the child was promoted by the custody modification.
539 So.2d at 523. Likewise, based on the record in this case and the trial court’s conclusions of fact, it would appear a clear substitution of our judgment for that of the trial court for this court to now conclude otherwise.
The mother’s second point on appeal contends the trial court erred in refusing to allow several witnesses to testify to hearsay statements by Mark recounting various instances of sexual abuse by his father. She argues that the trial court erred when it refused to allow two teachers, an examining doctor, a detective and an investigator of the CPT unit to testify pursuant to section 90.803(23), Florida Statutes (1989). These witnesses were offered during the *585 early part of the mother’s case, before the children took the stand and before it was known for sure that Mark, the main focus of the sexual abuse, would even testify. During the presentation of these five witnesses the trial judge refused to allow some of them to testify as to what Mark had allegedly told them regarding sexual abuse by his father. The father objected on the grounds that such evidence would violate the confrontation clause of Amendment VI of the United States Constitution. It is not entirely clear the exact grounds used by the trial judge in refusing to allow said testimony; however, to some extent he did rely on Idaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). As to at least one of the witnesses, the judge stated that he would not allow the testimony at that time because if the child testified the court would not need the other hearsay testimony — but he would allow the mother to present further argument as to why the court should admit the hearsay testimony of these witnesses. Nevertheless, during the presentation of these five witnesses, a good many of Mark’s statements regarding child abuse by his father were admitted, so that it cannot be said that the trial judge was not apprised of the essential point of the testimony of these witnesses one way or another.
We do not agree with some of the trial judge’s evidentiary rulings in this portion of the trial. The fact that the child testified to the instances of abuse does not preclude the admission of his hearsay statements to others if the statutory protections are met. Section 90.803(23), Florida Statutes (1989). However, we do not believe that reversible error was committed here, as charged by the mother, for several reasons. First, as the trial judge’s order demonstrates beyond peradventure of doubt, he was convinced by his experience with the parties and witnesses that anything the child said pointing to child abuse by the father was conjured up and orchestrated by the mother. As a consequence, whether the accusations were heard directly from the child or third parties repeating what the child told them, they carried little probative value with the fact finder. Secondly, no adequate proffer was made to show exactly what those witnesses would say if allowed to testify fully. Thirdly, enough evidence of the alleged statements by the child to said witnesses was admitted along the way so as to demonstrate the cumulative nature ,-of the hearsay. We realize that the general rule regarding cumulative testimony does not pertain here. But we would refer to section 90.403 for some support in holding that, considering the total untrustworthiness of the child’s testimony in the mind of the trial judge because of the coaching by the mother, such relevant evidence becomes inadmissible “needless presentation of cumulative evidence.” See Pardo v. State, 596 So.2d 665 (Fla.1992). In summary, we are convinced that any error committed in the evidentiary rulings of the trial court was harmless. As we pointed out earlier, the wife presented substantial evidence of child abuse by the father, but the trial judge did not believe it. There was also substantial competent evidence to support the trial judge’s conclusion and thus the call was his, not ours.
Accordingly, we affirm the order appealed from.
GUNTHER and WARNER, JJ., concur.