95 So.2d 25 (1957)
Beulah GRANT, Appellant,
v.
Ruby Iva CORBITT, Appellee.
Supreme Court of Florida, En Banc.
April 24, 1957.
Rehearing Denied June 3, 1957.
*26 John P. Wilkerson, Eustis, for appellant.
Harry P. Johnson, Tavares, for appellee.
ROBERTS, Justice.
This is a child custody case. The adversaries are the appellant Beulah Grant (now Beulah Grant Spivey), the child's mother, and the appellee Ruby Iva Corbitt, the child's paternal aunt. The child, Kenneth Grant, is fifteen years of age. His mother and father were divorced in 1944 by a decree of the Circuit Court of Lake County, Florida, in which his custody was *27 awarded to the mother. The mother now resides in Georgia, the whereabouts of the father are not shown by the record, and the aunt is a resident of Florida.
Kenneth ran away from his mother's home in Georgia and came to Eustis, Lake County, Florida, where both his paternal grandmother and aunt live, in June 1955. The aunt immediately filed a petition in the Lake County divorce suit, stating among others that Kenneth had run away from home because of the cruel treatment of his mother and stepfather, and asking for temporary and permanent custody of Kenneth. The Chancellor, without notice to the mother, awarded temporary custody of Kenneth to his aunt until the further order of the court. The mother filed a motion to dismiss the petition and vacate the order granting temporary custody to the aunt, and also an answer. The motion to vacate and dismiss was denied and a full hearing was held at which both sides presented evidence in support of their respective claims as to the welfare and custody of Kenneth. After the hearing the Chancellor entered an order continuing the cause for at least 30 days "for further study by the Court," and six weeks later filed his order granting permanent custody of Kenneth to his aunt, but retaining jurisdiction "for the entry of such other and further Orders as may from time to time be necessary." The mother has appealed.
On this appeal, it is contended on behalf of the mother that the trial court erred in entering the order granting temporary custody to the aunt, who was not a party to the original divorce proceeding, without giving the mother notice and an opportunity to be heard. We agree that this was technically an error. While in proceedings to modify a divorce decree it is not necessary to serve new process on the adverse party, such party is entitled to adequate notice and opportunity to be heard before such decree may be altered in a manner that will directly affect his person, status or property. Moore v. Lee, Fla. 1954, 72 So.2d 280, 42 A.L.R.2d 1112. And it was indicated in Hernandez v. Thomas, 1905, 50 Fla. 522, 39 So. 641, 644, 2 L.R.A.,N.S., 203, that it might be procedurally improper to permit a third party to litigate the question of a child's custody by filing a petition in a divorce suit that had long since passed into a final decree of divorce between the child's parents. But the court said in that case that "inasmuch as it is one of those unfortunate contests over the custody of children, where considerable rancor is manifest, we deemed it best, under all the circumstances of the case, to pass over the technicalities of procedure and to dispose of the case upon its merits." This language is appropriate here, both as to the propriety of the procedure adopted by the aunt and as to the question of notice and opportunity to be heard. For the mother did, in fact, have a full hearing before the Chancellor on the question of the child's welfare and custody before the entry of the order granting permanent custody to the aunt. It is well settled that the welfare of the child is the paramount consideration in cases of this kind; and the Chancellor found, after the hearing, that the welfare of the boy would be best served by changing his custody from his mother to his aunt. In these circumstances, the procedural error in holding the hearing before the final order changing custody was entered, instead of before the entry of the temporary order, does not require and would not justify a reversal of the final order as to custody.
It is also contended on behalf of the mother that the Circuit Court of Lake County had no jurisdiction of the subject matter of the cause, since she is domiciled in the State of Georgia and, as the legal custodian of Kenneth, his domicile follows hers. This contention cannot be sustained. In Di Giorgio v. Di Giorgio, 1943, 153 Fla. 24, 13 So.2d 596, 597, this court said:
"The law is and has been from time immemorial that each state is not only empowered, but is charged with the duty to regulate the custody of infants within its borders. This is true even *28 though the parents may be residents of another state. [Citations.] For this, the residence of the child suffices, though the domicile be elsewhere. Finlay v. Finlay, 240 N.Y. 429, 148 N.E. 624, 625, 40 A.L.R. 937.
"The reason for this law is to protect the incompetent where they are because it is there where the protection is needed and there alone where a judicial order may be executed."
We hold, therefore, under the authority of Di Giorgio v. Di Giorgio, supra, that the residence of the boy and his aunt in Lake County Florida, was sufficient to confer jurisdiction upon the court, even though the boy's legal domicile may have been in Georgia, the legal domicile of his mother.
The only remaining question worthy of note has to do with the sufficiency of the evidence to support the ruling of the Chancellor, which deprived the mother of custody of her son. We are fully cognizant of the rights of a natural parent to the custody of his or her child and subscribe to the oft-stated rule that, all things being equal, the natural parent has the superior right of custody as against relatives or other third persons. Nor have we overlooked the rule that the rights of the parents will not be disregarded "in order to gratify the mere wishes of a child, when the parent or guardian is a proper person to be intrusted with its custody." Marshall v. Reams, 32 Fla. 499, 14 So. 95. But this court cannot, in any type of case, overturn the decision of a Chancellor made in the exercise of his judicial discretion in the absence of a clear showing of an abuse thereof; and, in a child custody case, the opportunity of the Chancellor to observe the demeanor and personalities of the parties and their witnesses and to feel forces, powers and influences that cannot be discerned by merely reading the record, assumes a new importance because of the many intangibles that must be evaluated in deciding the delicate question of child custody.
As has been noted, the order here reviewed was entered after six weeks of deliberation by the Chancellor and, we have no doubt, only after the most careful and thoughtful consideration of the mother's rights in the matter. We have considered the testimony in the same light and are compelled to conclude that, for the present, the boy should remain with his aunt rather than be forced to live with his mother and his new stepfather in a home atmosphere that has become intolerable to him and from which he emerged "underweight, undernourished and with a vitamin deficiency", according to a doctor's report, and weighing only seventy-nine pounds at age fifteen.
Accordingly, the order awarding custody to the aunt is affirmed, but without prejudice to the right of the mother to petition for his custody at any time that she may be so advised and circumstances have changed sufficiently to warrant her in so doing.
Affirmed.
TERRELL, C.J., and HOBSON, DREW, THORNAL and O'CONNELL, JJ., concur.
THOMAS, J., dissents.