386 So.2d 577 (1980)
Jerome C. BERLIN, Appellant,
v.
Dawna Michele BERLIN, Appellee.
Nos. 79-1722, 79-1723.
District Court of Appeal of Florida, Third District.
July 15, 1980.
Rehearing Denied August 28, 1980.
Cypen & Nevins and Wayne Cypen, Miami Beach, for appellant.
Brumer, Cohen, Logan & Kandell, P.A., and Kenneth R. Duboff, Miami, for appellee.
*578 NESBITT, Judge.
This is a consolidated appeal from a judgment entered on a petition for change of custody which transferred custody of two minor children from their father to their mother. We find error and reverse.
This is the second appearance of this case before this court. On April 10, 1979, this court affirmed an order changing custody of the minor children from the mother to the father.[1] On April 23, 1979, the mother filed a petition for change of custody which alleged that: (a) there was "new evidence" and a "new status" since the previous modification award entered on January 18, 1978; (b) she had "maintained a stable life"; (c) she had been evaluated by a psychiatrist who found her to be "normal, stable, and capable of caring for her children in a proper way"; (d) the best interests of the children would be served by returning them to the mother since the court had already determined in a prior hearing that the father was only to have temporary custody of the children;[2] and (e) the children had expressed their preference to live with the mother.

HISTORY OF THE CASE
The parties' marriage was dissolved by a judgment entered on February 8, 1974. That judgment incorporated a separation agreement which granted permanent custody of the children to the mother while reserving reasonable visitation rights for the father.
In April of that year, the mother moved with the children from Miami to a motel in Orange Park, Florida (a suburb of Jacksonville) where her family lived. This was the first in a series of relocations which the mother embarked upon, each time uprooting the children, which the trial court later found to have a detrimental effect upon them. The mother remained in Orange Park until early 1975 when she moved with the children to Colorado. In the summer of 1975, they returned to Miami where they stayed until September, at which point they again moved back to Orange Park. In June of 1976, they once again returned to Miami. The mother placed the children in day care centers while she worked.
In March of 1977, the mother learned of the father's plans to remarry and, once again, moved back to Orange Park. The father filed an injunction to prevent the mother from moving the children to Orange Park during which proceeding the mother was examined by a court-appointed psychiatrist. This examination revealed that the mother had serious psychological and emotional problems. The psychiatrist directed the mother to a psychologist where she underwent psychotherapy. As a result of the proceedings and the results of the examination, the court ordered a modification of custody and visitation. Additionally, the court required the mother to reside in either Dade, Monroe, Collier, or Broward County and to receive psychotherapy at the father's expense. In compliance, she moved to Broward County.
The mother then engaged in a series of activities that displayed a vindictive effort to frustrate the father's visitation rights. Ultimately, the father filed a petition to modify the custody rights which culminated in the order entered January 18, 1978 changing permanent custody of the minors to the father. That order appears to have been entered because of the mother's mental health and because in the past she had effectively frustrated the father's visitation rights and proposed to drastically curtail the father's future visitation rights by moving to and living in the Jacksonville area. The mother was required to submit to additional psychiatric examination by a court-approved psychiatrist, apparently as a condition *579 to the exercise of her visitation privileges.

THE MOTHER'S MENTAL HEALTH
The record demonstrates that the mother was seen by the court-approved psychiatrist on four occasions between January and June of 1978. At the final hearing, conducted on August 30, 1979, her court-approved psychiatrist testified, by way of deposition, that he could find no reason for her to continue psychotherapy based upon his evaluation of the mother as of February 2, 1978 (some two weeks after the order changing custody which required the mother to undergo psychotherapy and nineteen months prior to the final hearing). The remaining visits to the court-approved psychiatrist were made by the mother to comply with the court's order.
The court-appointed psychiatrist, who had also examined the parties, testified at the final hearing that there had been no change in the mother's mental health. His observations were also based upon documentary evidence generated through her court-approved psychiatrist. Like our colleagues in Ashleman v. Ashleman, 381 So.2d 364 (Fla.4th DCA 1980), we find the circumstances here strongly suggest that a current psychiatric evaluation of the mother would have been in order. Nonetheless, we accept as an established fact that the mother's mental health was normal.

THE MOTHER'S STABILITY
At the final hearing, the mother testified that her attitude had changed because she had learned to cope with stress. She also testified that she was employed weekdays between the hours of nine and five as a controller of a motel in Orange Park; that she had joined organizations, made friends, and was beginning to date; and that she desired to care for the children.

THE PREFERENCE OF THE CHILDREN
At the time of the underlying evidentiary hearing, the parties' son was ten years old and their daughter was eight. Neither of the children appeared in court. The mother's court-approved psychiatrist testified, through deposition, based upon conversations with the mother, that the children desired to live with her. The court-appointed attorney ad litem for the children also reported that the children preferred to live with the mother. However, the court-appointed psychiatrist, as well as the children's attending psychiatrist, testified that the children were not of sufficient maturity and wisdom to make an intelligent choice between their parents. A child must be of sufficient intelligence, understanding, and experience to express preference for a custodial parent. § 61.13(3)(i), Fla. Stat. (1979). Only the desire of a child mature enough to make a reasonable choice between competing custodial parents is entitled to any weight. Marshall v. Reams, 32 Fla. 499, 14 So. 95 (1893); Goldstein v. Goldstein, 264 So.2d 49 (Fla.3d DCA 1972).

FRUSTRATION OF THE MOTHER'S VISITATION RIGHTS
In the order appealed from, the court found that both parties exhibited an intransigent behavior with respect to the visitation rights of the other. In particular, the court found the father had denied the mother reasonable visitation with the children on one occasion when he unexpectedly took them on a two-week holiday to Switzerland. The only other support in the record for a showing of frustration of the mother's visitation rights was the testimony by the maternal grandmother (who also lived in Orange Park) that the children seemed oblivious to her during visitation when formerly they had enjoyed a close relationship.
During the twenty-month interval between the separate custody orders involved, the mother rarely visited the children in Miami. She admitted that she and the father did not discuss the children. She was aware that the children were seeing a psychiatrist but had not attempted to contact him about the children's mental health or progress.
*580 A custodial parent's frustration of visitation rights of the noncustodial parent may warrant a change in custody where there are aggravating circumstances, such as: alienation of affection, Brust v. Brust, 275 So.2d 598 (Fla.1st DCA 1973); or where such frustration is accompanied by a vengeful attitude of the custodial parent, Stewart v. Stewart, 261 So.2d 864 (Fla.3d DCA 1972). No suggestion is made nor does the record disclose such aggravating factors in this case.

THE BEST INTERESTS OF THE CHILDREN
Of all the criteria prescribed by Section 61.13(3), Florida Statutes (1979), the best interests of the child is the polestar in a child custody dispute. Dinkel v. Dinkel, 322 So.2d 22 (Fla. 1975). Although there is a paucity of evidence of other relevant factors which are needed to support a change in custody, the trial court's finding and ruling that: "there had been a material and substantial change of circumstances" since the entry of the order on January 18, 1978, which would benefit the children, is unsupported by the record. There is no direct testimony in this record to show that a change in custody from the father to the mother will promote the best welfare and interests of the Berlin children. Sayward v. Sayward, 43 So.2d 865 (Fla. 1949); Belford v. Belford, 159 Fla. 547, 32 So.2d 312 (Fla. 1947); Adams v. Adams, 385 So.2d 688 (Fla.3d DCA 1980); Walfish v. Walfish, 383 So.2d 274 (Fla.3d DCA 1980). The only evidence this record demonstrates in support of a substantial change in circumstances arises inferentially from the mother's normal mental health and stability. That inference, standing alone, falls far short of a showing of substantial or material change in circumstances which will directly inure to the benefit of the children.
In awarding custody, "the father of the child[ren] shall be given the same consideration as the mother ...," Section 61.13(2)(b), Florida Statutes (1979), except where the children are of tender age, Dinkel v. Dinkel, supra. A trial court does not enjoy the same degree of discretion when modifying custody as it does in awarding custody in the initial decree. Jacobs v. Ross, 304 So.2d 542 (Fla.3d DCA 1974); Frye v. Frye, 205 So.2d 310 (Fla.4th DCA 1967).
In this case, the trial court made findings which directly contravened its order when it found:
The Court has heard the testimony of the children's school teachers as well as the custodial father and his present wife. From their testimony, the Court finds that the children are well adjusted, at home and in school with excellent grades.
As confirmed by the previous opinion of this court,[3] the evidence before the trial court demonstrated that the children were thriving in the father's custody and that they had adjusted to and become engaged in cultural, religious, and athletic activities with other children outside the home. The court-appointed psychiatrist testified that the children needed a constant, consistent environment and that continuity with their father and stepmother was fulfilling that need. The children's psychiatrist testified that it was becoming increasingly important for the boy to be with his father at his particular stage of development. He further testified that to uproot the children would be extremely disruptive. He told the court that the children had become attached to the new baby born to the father and their stepmother. Although the mother took issue with the testimony, she did not present any evidence at trial to contravene it.
Moreover, the mother made no showing that the children's need for frequent and regular contact with the father had diminished or that that demand could be met by moving the children to Orange Park. There was no showing that the father's custody of the children was unsatisfactory in any way; nor was there any showing made that a change of custody from the father to the mother would directly inure to *581 the benefit of the children. The most suggestive evidence the mother could muster to fault the custodial father was his lack of discipline of the children. Otherwise, she admitted the children had a good relationship with their father and stepmother.
The mother also attempted to fault the father by showing that while under his custody the children were being over-medicated with Mellaril by their attending psychiatrist. The evidence demonstrated that the children were receiving small doses of Mellaril but there was virtually no evidence that it had any adverse effect upon them. Furthermore, the psychiatrist, previously engaged by the mother when she was the custodial parent, testified that some type of psychiatric intervention was indicated for the children. The mother failed to present evidence which would indicate that the father's custody and care of the children was detrimental to their well-being.

CONCLUSION
We are not unaware that the trial judge was in a superior position to observe the parties and their witnesses and feel the forces and powers and influences that cannot be discerned by the reading of the cold record. Grant v. Corbit, 95 So.2d 25 (Fla. 1957). Nonetheless, when the statutory criteria enumerated for determining child custody, as prescribed by Section 61.13(3), Florida Statutes, are assayed against the record, it becomes clear that the trial court's order was not supported by competent, substantial evidence to show that there had been a substantial or material change in circumstances. Adams v. Adams, supra; Walfish v. Walfish, supra.
In this case, the twenty-month interval in which the children had been with their father (a time when they rapidly developed, both physically and emotionally, and established close ties with their father and stepmother), militated strongly in favor of continuity of that relationship. § 61.13(3)(a) and (d), Fla.Stats. (1979).
Again, we stress that upon the most critical factor in a custody proceeding; i.e., the best interests of the children, there was virtually no direct testimony presented by the mother to support her defense of the order changing custody. At most, there is an inference which arises in her favor, based on her normal state of health and stability. There is then an absence of competent, substantial evidence to show that a change in custody would promote the best interests and welfare of the Berlin children. Bennett v. Bennett, 73 So.2d 274 (Fla. 1954); Belford v. Belford, supra; Adams v. Adams, supra; Walfish v. Walfish, supra; Sanders v. Sanders, 376 So.2d 880 (Fla.1st DCA 1979).
Accordingly, the judgment modifying custody, entered August 30, 1979, is reversed; the order awarding permanent custody to the father, entered January 18, 1978, is reinstated.
Reversed.
NOTES
[1] Berlin v. Berlin, 369 So.2d 434 (Fla.3d DCA 1979).
[2] Allegations with respect to a temporary custody award to the father were subject to a motion to strike. On the father's cross-appeal presented in the first appearance of this case (see note 1), this court determined that the trial court was without jurisdiction to modify the previous order of January 18, 1978 and award temporary custody to the father without that issue being raised by the pleadings or new evidence.
[3] See note 1.