680 So.2d 538 (1996)
Valerie MARADIE, Appellant/Cross-Appellee,
v.
John B. MARADIE, Appellee/Cross-Appellant.
No. 95-4068.
District Court of Appeal of Florida, First District.
July 16, 1996.
*539 Michael T. Webster, Shalimar; Kathryn D. Kendell and Alice Philipson of the National Center for Lesbian Rights, San Francisco, CA, for Appellant/Cross-Appellee.
E. Jane Brehany of Myrick, Davis & Brehany, Pensacola, for Appellee/Cross-Appellant.
*540 PER CURIAM.
Valerie Maradie appeals a final judgment of dissolution awarding primary residential custody of the parties' daughter to her former husband, John B. Maradie. She contends that the trial court erred in awarding custody to her former husband based on the court's taking judicial notice that "a homosexual environment is not a traditional home environment, and can adversely affect a child." Because the trial court failed to follow the statutory procedure required for judicial notice, see, section 90.204(a), Florida Statutes (1995), and the subject judicially noticed is not within the limited subjects authorized by statute as matters that may be judicially noticed, we reverse and remand for further proceedings.

The Trial Court Proceedings
The parties' only child, a daughter, was born in 1991. On January 29, 1993, Valerie Maradie filed for divorce. During the pendency of the divorce proceeding, the parties shared custody, each having primary custody every other week. At the three-day trial, among the evidence presented on the issue of child custody was considerable testimony about the sexual conduct of each party and its relation to the "moral fitness" of each party under section 61.13(3)(f), Florida Statutes (1995),[1] including evidence relating to Valerie Maradie's admitted bisexuality and involvement in lesbian relationships. The court-appointed psychologist testified, however, that he had seen no evidence that the former wife's sexual orientation impaired her parenting ability or had negatively impacted the child.[2] The trial court awarded Mr. Maradie primary residential custody of the parties' daughter, in part on the following basis:
In deciding the child custody issue, the only factor under F.S. 61.13 that seems to have particular significance is subsection (f) regarding the moral fitness of the parties.
The testimony reveals that Mrs. Maradie, with her homosexual lover, spend nights and sleep together in the same bed, kiss, hold hands and speak in terms of endearment in front of the child. The possibility of negative impact on the child, especially as she grows older and reaches her late *541 pre-teen and early teen years, is considerable.[[3]] The Court does not have to have expert evidence to reach this conclusion, but can take judicial notice that a homosexual environment is not a traditional home environment, and can adversely affect a child. To say that this cannot be considered until there is actual proof that it has occurred is asking the Court to abdicate its common sense and responsible decision-making endeavors.
The former wife urges this court to determine in the instant case whether trial courts can deprive a mother of custody of her child solely because the mother is a lesbian. That issue, however, was not decided by the trial court below and is not the issue before us. As this court has observed, "the function of an appellate court is to determine whether the lower tribunal committed error based on the issues and evidence before it." Hillsborough County Board of County Comm. v. Public Employees Relations Comm., 424 So.2d 132, 134 (Fla. 1st DCA 1982). The limited question presented here is whether the trial court erred in taking judicial notice that a "homosexual environment ... can adversely affect a child."

Judicial Notice
In our justice system, the practice of taking judicial notice of adjudicative facts should be exercised with great caution. Makos v. Prince, 64 So.2d 670, 673 (Fla.1953). This caution arises from our belief that the taking of evidence, subject to established safeguards, is the best way to resolve disputes concerning adjudicative facts. When a matter is judicially noticed "it is taken as true without the necessity of offering evidence by the party who should ordinarily have done so." Id. Thus, historically, "judicial notice applies to self-evident truths that no reasonable person could question, truisms that approach platitudes or banalities." Hardy v. Johns-Manville Sales Corp., 681 F.2d 334, 347-48 (5th Cir.1982).
When the concept of judicial notice was legislatively adopted in the Florida Evidence Code, Chapter 90, Florida Statutes, this historic caution was codified. Thus, section 90.202, Florida Statutes (1995), permits a court to take judicial notice of only a limited number of matters.[4] Only subsection 90.202(11), dealing with generally known *542 facts, and subsection 90.202(12), dealing with indisputable facts, could arguably provide a basis for the judicial notice in the instant case.
We first consider judicial notice under subsection 90.202(12). To fulfill the requirements of this provision, the facts sought to be noticed must not be subject to dispute "because they are capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." Obviously, to fit within subsection 90.202(12), accurate records or other sources must exist which establish the judicially-noticed fact. Ehrhardt, Florida Evidence § 202.12, at 52 (West 1996 Ed.). Here, no records or sources were before the trial court which established the "fact" of which the trial court took judicial notice. Further, on appeal, we have not been directed to any indisputable source which establishes the judicially-noticed fact in this case. Thus, judicial notice was not appropriate under section 90.202(12).
Turning to subsection 90.202(11), to fulfill the requirements of this provision the noticed facts must not be subject to dispute "because they are generally known within the territorial jurisdiction of the court." This subsection is recognized to be a codification of the common law pre-dating the adoption of Florida's Evidence Code under which "Florida courts have taken judicial notice of facts which are `open and notorious', involve `common notoriety' or are `commonly known'." Ehrhardt, Florida Evidence § 202.11, at 51 (footnotes omitted). See, Makos, 64 So.2d at 673. The judicially-noticed matter in the instant case is an inappropriate subject for judicial notice under subsection 90.202(11), because it is not a "fact" that is "generally known" within the meaning of the statute. This conclusion is clear from the testimony of the court-appointed psychologist, quoted in part in footnote 2, the only evidence in the record on this point.
At the very least, Valerie Maradie should have been given notice and an opportunity to dispute the matters which the trial court judicially noticed. § 90.204(1), Fla. Stat. (1995); Bonifay v. Garner, 503 So.2d 389 (Fla. 1st DCA 1987); United States Sugar Corp. v. Hayes, 407 So.2d 1079 (Fla. 1st DCA 1982). The trial court's first announcement of this judicially-noticed fact was in the final judgment, which effectively denied Valerie Maradie any opportunity to dispute the matters noticed.

"Moral Fitness" Under Section 61.13(3)(f)
By reversing here, we do not mean to suggest that trial courts may not consider the parent's sexual conduct in judging that parent's moral fitness under section 61.13(3)(f) or that trial courts are required to have expert evidence of actual harm to the child. In considering the parent's moral fitness, however, the trial court should focus on whether the parent's behavior has a direct impact on the welfare of the child. Dinkel v. Dinkel, 322 So.2d 22 (Fla.1975).
In Dinkel, the trial court awarded custody of the parties' child to the mother, despite her involvement in an adulterous relationship. On appeal, this court reversed, concluding that "[u]nder the circumstances she [the mother] cannot be said to be a fit and proper custodian of the child" and "a female parent who commits adultery in the presence of her child can hardly be called `mother' in the traditional American sense." Dinkel, 305 So.2d 90, 91-92 (Fla. 1st DCA 1974). The supreme court quashed this court's decision and reinstated the award of custody to the mother, reasoning that "[t]he moral unfitness of a mother must be such as has a direct bearing on the welfare of the child, if it is to deprive her of the custody of the child." Dinkel, 322 So.2d at 23, quoting McAnespie v. McAnespie, 200 So.2d 606, 609 (Fla. 2d DCA 1967). The Dinkel court said:
Adultery may or may not have a direct bearing on the welfare of a child of tender years. Engaging in sexual intercourse with someone other than one's spouse in the same household where the subject child is present does not necessarily affect the child's welfare. Whether the adultery has a direct bearing on the welfare of the child is a question for the trier of fact. Where the trier of fact determines that the spouse's adultery does not have any bearing on the welfare of the child, the act of adultery should not be taken into consideration *543 in reaching the question of custody of the child.
Where the trier of fact reaches the conclusion that the adulterous conduct adversely affects the child, the scales are tipped against the award of custody to the adulterous spouse.
Dinkel, 322 So.2d at 23-24.
As Dinkel makes clear, the determination of a parent's moral fitness to have custody of a child is a matter peculiarly within the province of the trial court. Under Dinkel, a connection between the actions of the parent and harm to the child requires an evidentiary basis and cannot be assumed. In addition, the mere possibility of negative impact on the child is not enough. This is not to say that the trial court must have evidence of actual harm, past or present. The trial court can base a decision on proof of the likelihood of prospective harm. See, Commander v. Commander, 493 So.2d 530 (Fla. 1st DCA), rev. denied, 501 So.2d 1281 (Fla. 1986).
Although we find evidence of record other than the matters judicially noticed which might support the award of custody to Mr. Maradie, because of the emphasis the trial court expressly placed on the matters judicially noticed, we cannot say that, absent the improperly judicially-noticed matters, the trial court would have made the same custody determination. See Chittenden v. Boyd, 669 So.2d 1136 (Fla. 4th DCA 1996). Thus, we are compelled to reverse and remand to the trial court to make a determination of custody in conformance with Chapter 61 after consideration of all pertinent factors set forth in section 61.13(3). The trial court may take additional evidence, in its discretion. As a result of our ruling here, we do not now reach the issue Mr. Maradie raises on crossappeal regarding the award of child support.
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.
JOANOS, BENTON and VAN NORTWICK, JJ., concur.
NOTES
[1] Section 61.13(3), Florida Statutes (1995) provides:

(3) For purposes of shared parental responsibility and primary residence, the best interests of the child shall include an evaluation of all factors affecting the welfare and interests of the child, including, but not limited to:
(a) The parent who is more likely to allow the child frequent and continuing contact with the nonresidential parent.
(b) The love, affection, and other emotional ties existing between the parents and the child.
(c) The capacity and disposition of the parents to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.
(d) The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.
(e) The permanence, as a family unit, of the existing or proposed custodial home.
(f) The moral fitness of the parents.
(g) The mental and physical health of the parents.
(h) The home, school, and community record of the child.
(i) The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.
(j) The willingness and ability of each parent to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.
(k) Any other fact considered by the court to be relevant.
[2] The testimony of the psychologist included the following:

Q. First of all, are you aware of Valerie's bisexuality?
A. Yes.
Q. Are you aware of her present involvement with another woman?
A. Yes.
Q. Does that involvement impair her parenting of Kaylan or Jason?
A. I've seen no evidence of that so far.
Q. You had referred to, I believe, whether or not there wereare there any psychological studies as to the impact of a child being raised by homosexual or bisexual parents?
A. I didn't see any research or data indicating that that has a negative impact on raising a child.
Q. From your own research, does being raised by a bisexual or homosexual parent significantly affect a child's own sexual orientation?
A. There's no research indicating that it has an impact on a child's development of sexual preference.
[3] Regarding conduct in front of the child by the former wife and her lesbian partner, the court-appointed psychologist testified below that their behavior together was not "inappropriate" and that the psychologist had not seen evidence that the former wife's conduct had negatively impacted the child.
[4] Section 90.202, Florida Statutes (1995), provides as follows:

90.202 Matters which may be judicially noticed.A court may take judicial notice of the following matters, to the extent that they are not embraced within s. 90.201:
(1) Special, local, and private acts and resolutions of the Congress of the United States and of the Florida Legislature.
(2) Decisional, constitutional, and public statutory law of every other state, territory, and jurisdiction of the United States.
(3) Contents of the Federal Register.
(4) Laws of foreign nations and of an organization of nations.
(5) Official actions of the legislative, executive, and judicial departments of the United States and of any state, territory, or jurisdiction of the United States.
(6) Records of any court of this state or of any court of record of the United States or of any state, territory, or jurisdiction of the United States.
(7) Rules of court of any court of this state or of any court of record of the United States or of any other state, territory, or jurisdiction of the United States.
(8) Provisions of all municipal and county charters and charter amendments of this state, provided they are available in printed copies or as certified copies.
(9) Rules promulgated by governmental agencies of this state which are published in the Florida Administrative Code or in bound written copies.
(10) Duly enacted ordinances and resolutions of municipalities and counties located in Florida, provided such ordinances and resolutions are available in printed copies or as certified copies.
(11) Facts that are not subject to dispute because they are generally known within the territorial jurisdiction of the court.
(12) Facts that are not subject to dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned.
(13) Official seals of governmental agencies and departments of the United States and of any state, territory, or jurisdiction of the United States.