742 So.2d 250 (1996)
Mary Frank WARD, Appellant,
v.
John Andrew WARD, Appellee.
No. 95-4184.
District Court of Appeal of Florida, First District.
August 30, 1996.
*251 Charlene Miller Carres, Tallahassee; Kathryn D. Kendell, Legal Director and Shannon Minter, Staff Attorney of National Center for Lesbian Rights, San Francisco, CA, for Appellant.
William E. Adams, Jr., Fort Lauderdale; Beatrice Dohrn, Legal Director, Lambda Legal Defense and Education Fund, New York City; Eric Rieder and Leslie Cooper of Robinson Silverman Pearce Aronsohn & Berman LLP, New York City, for Appellant Amicus Curiae The Lambda Legal Defense and Education Fund.
Edward P. Fleming of McDonald, Fleming, Moorhead & Ferguson, Pensacola; Ted A. Stokes, Milton, for Appellee.
Robert N. Heath, Jr., Pensacola; Karen Papasodora of National Legal Foundation, Virginia Beach, VA, for Appellee Amicus Curiae The Family Research Institute.
PER CURIAM.
Mary Frank Ward appeals an order modifying a final judgment of dissolution by transferring primary residential custody *252 of the parties' 11 year-old daughter, C.W., from appellant to appellee, John Andrew Ward, her former husband. Because the trial court's decision is supported by competent and substantial evidence establishing a substantial change in circumstances which has detrimentally affected the best interests of C.W., we affirm.
Appellant contends that the trial court erroneously focused solely on her lesbian sexual orientation in making the decision to change custody. We disagree. Although this case involves the modification of primary residential custody from a mother who is a lesbian, the focus of this case is not on the mother's sexual orientation, but on the best interests of the child. Appellant's argument that the trial court's change of custody was based solely on her sexual orientation ignores the evidence, and the reasonable inferences drawn from the evidence, that C.W. was being adversely affected by exposure to conduct occurring in appellant's home. See, Maradie v. Maradie, 680 So.2d 538 (Fla. 1st DCA 1996).
In addition, contrary to the appellant's contentions, this case is not about an 11 year-old girl who has poor table manners and is guilty of poor hygiene, behavior which may not be unusual for a child of C.W.'s age. Instead, this case involves evidence of C.W.'s problematic behavior and language which the trial court found sufficient to establish a showing of detrimental impact on C.W. The trial court was in the best position to interpret this evidence and, particularly involving matters of child custody, this court should not overturn a decision made in the exercise of the trial court's judicial discretion in the absence of a clear showing of an abuse of that discretion. Grant v. Carbitt, 95 So.2d 25, 28 (Fla.1957); McIntyre v. McIntyre, 452 So.2d 14, 21 (Fla. 1st DCA 1984).

I.
When the parties divorced in 1992, they stipulated that appellant would have primary residential custody of C.W. At the time of the divorce, the appellee was aware that his former wife had been and was involved in lesbian relationships. After the divorce, the appellant began to live with a female partner. In addition, two of the appellant's daughters from a previous marriage returned to live with appellant and her partner. Her oldest daughter, age 26 and also a lesbian, lived in appellant's home and, with her female partner, slept in the bedroom adjoining C.W.'s bedroom.
The record also reflects that in 1974 appellee was convicted of the second degree murder of his first wife, and served eight and one-half years in prison for that murder. At the hearing below, he testified that the murder was the result of stupidity, jealousy, and anger. At the trial, appellee was questioned extensively concerning the murder and his conduct since 1974. Except for minor traffic offenses, however, appellee has not been charged with or convicted of any criminal offense since being released from prison. He has also maintained stable employment and is presently married to Rita Ward, who testified that she has a good relationship with C.W., that she loves C.W., and felt that C.W. returned her love.
Appellee testified that he sought custody of C.W. because, based on C.W.'s unusual and inappropriate statements and behavior, he became concerned that C.W. was being adversely affected by exposure to conduct occurring at the appellant's home. Without going into all of the detailed testimony, the record reflects that C.W.'s problematic behavior exhibited itself on numerous occasions while she was visiting with appellee and Rita Ward. During one visit, C.W. asked Rita if Rita had "ever been in love with a woman." On another visit, in reference to a particular part of the female anatomy, C.W. told Rita "I bet my daddy F's you there." On another occasion, when Rita had purchased a back massager, C.W. informed her that "You won't need my daddy if you have that, will you?" At another time, while playing with *253 a doll at appellee's home, C.W. undressed the doll and placed her fingers between the doll's legs. When Rita told her that such behavior "wasn't nice for little girls to do," C.W. responded, "I'm not nice." And, appellee testified that, when he explained to C.W. that he did not allow her to watch R-rated movies, "[C.W.] said she done seen all this and that her mama ... and [appellant's female partner] sleep together. They do ... some of the things that's in the movies." Appellee also testified that C.W. was withdrawn, did not use appropriate bathroom hygiene, did not have good table manners, did not keep her hair clean, and preferred to wear men's cologne.
Appellant testified that C.W. was not aware of the sexual nature of the relationship between appellant and her partner. Further, she denied that C.W. had been exposed to any sexual conduct in her home or that C.W. was allowed to watch R-rated movies or use inappropriate language.
The trial court found, based upon the totality of the evidence relating to C.W.'s behavior and comments, that she had been exposed to conduct in appellant's home which was inappropriate for a child of her age and that she was being harmed by that exposure. As a result, the trial court concluded that a change in custody would be in the best interests of the child. The trial court granted appellee's petition for modification, continued shared parental responsibility for C.W., designated appellee as the primary residential parent for C.W., and established a visitation schedule for appellant.

II.
Before the primary residence of C.W. could be modified, appellee was required to meet the "extraordinary burden" of demonstrating a substantial and material change in circumstances since the original decree awarding custody and that the best interests of C.W. would be promoted by a change in custody. Smoak v. Smoak, 658 So.2d 568 (Fla. 1st DCA 1995). In addition, the trial court has considerably less discretion in a modification proceeding than it does in an initial determination of primary residential responsibility. Jablon v. Jablon, 579 So. 2d 902, 903 (Fla. 2d DCA 1991). Nevertheless, the trial court's decision to modify custody arrives in this court with a presumption of correctness, and the appellant must demonstrate that the order appealed is clearly erroneous. Wilson v. Wilson, 504 So.2d 1278, 1279 (Fla. 1st DCA 1986). Absent a showing of an abuse of discretion by the trial court, this court is not at liberty to disturb the modification of custody. In re Gregory, 313 So.2d 735, 738 (Fla.1975); McIntyre v. McIntyre, 452 So.2d at 20. A trial court's judicial discretion is abused only where, based on the evidence before the trial court, no reasonable person would take the view adopted by the trial court and "[i]f reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion." Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980).
Further, this court may not substitute its judgment for that of the trier of fact by reevaluating the evidence. In re Gregory, 313 So.2d at 738. Where, as here, the evidence is in conflict, appellee, as the prevailing party below, is entitled to have the evidence viewed in a light most favorable to him. Wilson, supra, 504 So.2d at 1279. To prevail on this appeal, therefore, appellant was required to demonstrate that the trial court's decision cannot be supported even when all evidence and all reasonable inferences from the evidence are viewed in the light most favorable to appellee. Id.
Based on this standard of review, we are unable to conclude that the trial court has abused its discretion. The record here contains competent and substantial evidence which, when viewed, as we are required to do, in a light most favorable to appellee, would support the lower court's conclusion that C.W. was being *254 harmed by exposure to conduct at appellant's home.
In affirming the decision of the trial court, however, we are not suggesting that the sexual orientation of the custodial parent by itself justifies a custody change. Instead, the central questions must be what is the conduct the child has been exposed to and what is the effect upon the child. As is the case when a child is inappropriately exposed to heterosexual conduct, the court's primary focus should be on what conduct is involved and whether the exposure to that conduct has had or is reasonably likely to have a direct and adverse impact on the child. Dinkel v. Dinkel, 322 So.2d 22, 23-24 (Fla.1975)("moral unfitness" of a custodial parent must have direct bearing on welfare of the child to be the basis for depriving the parent of the custody of the child); Maradie, supra, 680 So.2d at 542. Thus, when the trier of fact concludes that the parent with primary residential custody is involved in a relationship, which has directly and adversely affected the child, regardless of the sexual orientation of that relationship, that relationship may be considered a substantial change in circumstances justifying a change in custody. See, Dinkel, supra, 322 So.2d at 24.
We believe that this approach properly places the emphasis on the best interests of the child. In this regard, we find persuasive the following analysis of our colleagues on the Fourth District:
We recognize that divorced parents with children are entitled to have new social lives after divorce, including the right to have loving relationships with other people. We cannot confuse that right with the entirely separate issue as to whether post-divorce conduct has affected the best interests of young children.
* * * * * *
We also recognize that the mere fact that the parent has sexual relations with other people does not, by itself, affect the best interests of the children. In a particular case, however, a parent's conduct in pursuing the right to have sexual relations with others can affect the best interests of minor children. A court is certainly justified in considering such conduct in making the custody decision where the pleadings and proof show that a parent's conduct has detrimentally affected children.
Murphy v. Murphy, 621 So.2d 455, 458, and n. 1 (Fla. 4th DCA 1993), rev. denied, 640 So.2d 1107 (Fla.1994).
We acknowledge appellant's arguments that the evidence here is in conflict and that C.W.'s behavior and comments may be equally susceptible to an interpretation that has no particular sexual reference or inappropriate motivation. Weighing and evaluating conflicting testimony and the inferences to be drawn from the testimony, however, are peculiarly the province of the trial court. Dinkel, supra, 322 So.2d at 24. Thus, even if we might be persuaded by the appellant's interpretation of the evidence, we would not reverse on that basis alone, "absent a finding of an abuse of discretion, which requires a lack of competent substantial evidence to sustain the findings of the trial judge." Id. As our supreme court has stated in Grant v. Corbitt, 95 So.2d at 28:
[T]his court cannot, in any type of case, overturn the decision of a Chancellor made in the exercise of his judicial discretion in the absence of a clear showing of an abuse thereof; and, in a child custody case, the opportunity of the Chancellor to observe the demeanor and personalities of the parties and their witnesses and to feel forces, powers, and influences that cannot be discerned by merely reading the record, assumes a new importance because of the many intangibles that must be evaluated in deciding the delicate question of child custody.

III.
On appeal, appellant also argues that section 61.13(2)(b)2., Florida *255 Statutes (1995), requires reversal here. This statute creates a rebuttable presumption that shared parental responsibility by a parent who has been convicted of a felony of the second degree or higher involving domestic violence will be detrimental to the child. Even though the crime for which appellee was convicted would trigger application of section 61.13(2)(b)2., the application of this statute was not argued by appellant to the trial court below. Since the function of this court is to review possible error committed by the trial court, absent jurisdictional or fundamental error, a legal argument must be raised initially in the lower court before it can be considered on appeal. Abrams v. Paul, 453 So.2d 826 (Fla. 1st DCA 1984). Accordingly, absent fundamental error, which appellant does not argue here, we are unable to consider whether this statute requires reversal. Nevertheless, the considerable evidence in the record concerning appellee's conduct and record since being convicted and imprisoned for the second degree murder of his first wife and his present circumstanceshis marriage, stable employment, and ownership of property would seem to support a conclusion that the statutory presumption has been rebutted in the instant case. See, Kopec v. Severance, 658 So.2d 1060 (Fla. 5th DCA 1995), rev. denied, 666 So.2d 901 (Fla. 1996); Heck v. Reed, 529 N.W.2d 155, 162-163 (N.D.1995).
AFFIRMED.
JOANOS, WOLF and VAN NORTWICK, JJ., concur.