IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
APRIL 20, 2000 Session

## In re: ADOPTION OF M.J.S.
**Direct Appeal from the Chancery Court for Shelby County**
**Nos. A5151-1; A5153-3(1); The Honorable Walter L. Evans, Chancellor**

---

**No. W1999-00197-COA-R3-CV - Filed October 5, 2000**

---

ALAN E. HIGHERS, J., CONCURRING SEPARATELY

I concur in the majority opinion authored by Judge Farmer. I write separately, however, because I am concerned that the dissenting opinion has overstated the issue presented in this case and has based its argument entirely upon premises unwarranted under Tennessee Law.

The issue in this case is not whether the members of this court approve the homosexual lifestyle or the adoption of children by homosexuals, but rather whether the adoption of this child by this prospective parent is in the child's best interest. As in any adoption case, the determinative issue was and remains what is in the child's best interest.

In the present case, the Chancellor was faced with the serious and difficult decision of whether or not it was in this child's best interest to be adopted by Debra Sue Langston. Rather than ignoring the evidence regarding Ms. Langston's relationship with Angela Craig, the Chancellor appeared concerned about this evidence and he specifically inquired into the details of the relationship. Despite this inquiry, no evidence was presented showing that Ms. Langston's propensities would have any negative effects on this child. It is important to note that this is a matter of proof and is not the type of evidence of which we or the Chancellor can take judicial notice. *See Maradie v. Maradie,* 680 So.2d 538, 541-542 (Fla. Dist. Ct. App. 1996); *Doe v. Doe*, 284 S.E.2d 799, 805 (Va. 1981).

States generally have followed either the *nexus* test or the *per se* rule in assessing the best interests of the child. *See* Karla J. Starr, Note, *Adoption by Homosexuals: A Look at Differing State Court Opinions*, 40 Ariz. L. Rev. 1497, 1501 (1998). In the *nexus* test, the court considers fitness, character, and conduct, including sexual behavior, on the part of the prospective parent and examines

whether any of these factors will have an adverse effect on the child. Under this analysis, proof is required to establish the various elements that relate to best interests.

The *per se* rule divests the trial court of any discretion in the case of specific individuals so that they are considered unfit *per se* regardless of their individual circumstances. *See,* e.g. Fla. Stat. Ann. 63.042(3), stating that "[n]o person eligible to adopt under this statute may adopt if that person is a homosexual." This is the approach postulated by the dissent in the case *sub judice*. It must fail, however, because (1) Tennessee is not a *per se* jurisdiction; and, (2) the record in this case is devoid of proof establishing a *nexus* or casual connection between Ms. Langston's status and harm to the subject child.

The reality in this case is that Ms. Langston was the adoptive parent chosen by the birth mother to raise her child. By the time of trial, the child had been in Ms. Langston's custody for over one-half of his life, and he knew Ms. Langston as his mother. The evidence was undisputed that Ms. Langston was a loving parent who had the financial means to provide for this child. Regardless of any personal beliefs that members of this court may harbor about Ms. Langston's lifestyle, the record simply contains no evidence as to what effects, if any, these factors may have on the child in the future.

I recognize that state legislatures and courts have reached different conclusions on the issue of adoption by homosexuals. I am not convinced, however, that a majority of other jurisdictions have expressed blanket disapproval of adoption by homosexuals as the dissent suggests. Some of the activity in this area in recent years, for instance, has consisted merely of proposed legislation that did not pass. Under the *nexus* analysis, the conduct and behavior of the prospective adoptive parent will always be relevant. Courts will always have the duty to examine such evidence as may be introduced relating to any harmful or adverse effect that such conduct may have upon the best interests of the child. But in the absence of such proof, as here, courts may not presume what the proof does not show.

Like Judge Tomlin, I am greatly concerned about the future of this young child. Based on the evidence before him, however, I do not see how the Chancellor could have reached a different conclusion without taking judicial notice of evidence that is not in the record. Like the Chancellor, this court's consideration of the best interests of the child is necessarily limited by what is contained in the record. Based on the evidence presented, I concur with the majority opinion affirming the Chancellor's final decree of adoption.

_____
ALAN E. HIGHERS, JUDGE